García et al. *v.* Garzot.

Apelación procedente de la Corte de Distrito de Humacao.

No. 761.—Resuelto en noviembre 11, 1912.

Emancipación de un Menor por Matrimonio—Consentimiento del Consejo de Familia—Presunción.—De acuerdo con los artículos 45 y 46 del Código Civil Español vigente en Puerto Rico en octubre de 1892, no es el tutor sino el consejo de familia el llamado a otorgar a un menor la licencia necesaria para contraer matrimonio, y cuando, como en el caso de autos, no se alega ni prueba que el consejo de familia dejara de conceder la licencia, se debe presumir que el matrimonio fué celebrado cumpliéndose con dicho requisito exigido por la ley entonces en vigor.

Id.—Emancipación Plena y Menos Plena.—El Código Civil Español vigente en esta isla en octubre de 1892, distingue dos clases de emancipación: una que puede llamarse *plena*, que se obtiene cuando se llega a la mayor edad, y otra que puede calificarse de *menos plena*, que se alcanza por razón del matrimonio, o por concesión del padre o de la madre que ejerce la *patria potestad.*

Id.—Restricciones Relativas al Dominio de los Bienes.—La emancipación *menos plena*, de acuerdo con el Código Civil antiguo, habilita al menor para regir su persona y bienes como si fuera mayor, pero con las restricciones definidas en los artículos 50 y 59 de dicho Código Civil antiguo, en los casos de emancipación por razón de matrimonio. El artículo 317 de dicho Código no es aplicable a la emancipación por razón de matrimonio.

Id.—Gravamen y Enajenación de Bienes Raíces—Cancelación de Hipoteca Constituída a Favor de un Menor Emancipado por Matrimonio.—Una hipoteca es un derecho real sobre un bien inmueble y está clasificada en el Código Civil como un bien inmueble. Cancelar una hipoteca es declararla extinguida, desprenderse de ella, y por consiguiente, enajenarla.

Id.—Enajenación de Bienes Raíces.—Enajenación es el acto por el cual se transfiere a otro la propiedad de alguna cosa a título lucrativo como la donación, o a título oneroso, como la venta o permuta. Esta palabra tomada en una significación más extensa, comprende también la enfiteusis, la prenda, la hipoteca, y aun la constitución de servidumbre sobre un fundo. Síguese de aquí que el que no puede enajenar una cosa, no la puede tampoco obligar, ni sujetar con hipoteca, ni imponerla servidumbre.

Id.—Cancelación de Hipoteca Constituida a Favor de un Menor Emancipado por Matrimonio.—La cancelación de un crédito hipotecario entraña un verdadero acto de enajenación, pues por aquélla se desapodera el acreedor de un derecho real que le pertenece, y por tanto, de acuerdo con el Código Civil Español vigente en Puerto Rico en octubre de 1892, un menor emancipado por

matrimonio, no tenía facultades por razón de tal hecho solamente para cancelar hipotecas constituídas a su favor.

ID.—PARTIDA BAUTISMAL—EXPEDIENTE ECLESIÁSTICO.—De acuerdo con la legislación vigente en Puerto Rico en octubre de 1892, la autoridad eclesiástica tenía facultades para tramitar y resolver un expediente relativo al asentamiento de una partida bautismal, con objeto de acreditar el promovente del expediente la fecha de su nacimiento y la resolución que dictara la autoridad eclesiástica era en tal virtud válida y eficaz.

ID.—CANCELACIÓN DE HIPOTECAS OTORGADAS POR UN MENOR EMANCIPADO—VALIDEZ DE LAS MISMAS.—En el presente caso se demostró que un menor de edad a quien faltaban sólo unos meses para llegar a su mayoridad, que hacía tiempo que estaba casado y por tanto emancipado por razón de su matrimonio, que tenía hijos y que había tramitado un expediente en el Obispado sobre asentamiento de su partida bautismal, apareciendo de la partida asentada que era mayor de edad y compareció ante notario público en dos ocasiones, y manifestó que era mayor de edad, presentando al efecto su dicha partida de bautismo y su cédula de vecindad y canceló cierta hipoteca constituída a su favor. Se demostró además que. el deudor pagó su deuda sin que conociera que su acreedor no era aún mayor de edad; que el menor vivió cerca de cuatro años después de otorgada la cancelación sin que nada reclamara y que esta reclamación pidiendo que se pague otra vez la deuda ya satisfecha con más sus intereses, se ha interpuesto por los herederos del acreedor después de catorce años de otorgadas las escrituras. Se resolvió que bajo tales circunstancias debía considerarse válida y eficaz la cancelación hecha por el menor y liberado el deudor de su deuda.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. Luis Llorens Torres.*

Abogado del apelado: *Sr. Juan Hernández López.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

La demanda en este caso, se basa en las siguientes alegaciones:

1. Los demandantes en este pleito son Francisco Paxot García y Adriana Paxot García, quienes son menores de veinte y un años de edad y comparecen representados por su legítima madre doña María García Buxó que ejerce sobre ellos la *patria potestad.*

2. El demandado es Don Juan R. Garzot, ciudadano de Puerto Rico, mayor de veinte y un años de edad, casado, propietario y vecino domiciliado en el término municipal de Naguabo, del Distrito Judicial de Humacao.

3. Los demandantes—dichos Francisco y Adriana—son

herederos universales de Don José Paxot Gragirena, quien falleció el día 14 de julio de 1899, siendo casado con. la compareciente Doña María García Buxó, y dejando como únicos hijos descendientes legítimos, a los dos expresados demandantes, quienes fueron procreados en dicho matrimonio y posteriormente declarados herederos de su referido padre, por sentencia de la Corte de Distrito de Humacao, dictada en 29 de diciembre de 1900.

Y el derecho o acción, que ahora ejercitan los demandantes, les corresponde por su calidad de herederos del finado Don José Paxot Gragirena.

4. En el año 1895, el citado José Paxot Gragirena, padre de los demandantes, era dueño de una hipoteca sobre una finca rústica llamada "San Cristóbal" que entonces pertenecía al demandado Don Juan R. Garzot. Dicha hipoteca estaba constituída por la suma de seis mil pesos, equivalentes a tres mil seiscientos dollars y devengaba un interés de seiscientos pesos (420 dollars) anuales.

5. En el mismo referido año 1895, el citado José Paxot Gragirena, padre de los demandantes y acreedor hipotecario del demandado en aquella fecha, era entonces menor de edad, no emancipado, y se hallaba.bajo la tutela de Don Alejandro Viader.

6. En el mismo año 1895, los referidos Don Alejandro Viader (tutor del menor José Paxot) y Don Juan R. Garzot (deudor del mismo menor), siendo íntimos amigos y puestos de acuerdo, hicieron que el menor José Paxot instara un procedimiento en el Registro Parroquial de Naguabo, declarando el propio Viader y otros testigos falsos, hasta lograr que se extendiera una partida bautismal, .completamente falsa, y en la que aparece que José Paxot fué bautizado en Naguabo, qué Viader fué su padrino de bautismo, y que nació en febrero de 1872; siendo todo completamente falso y simulado, y siendo la verdad que José Paxot no fué bautizado en la Iglesia de Naguabo sino en San Juan de Puerto Rico,

que su padrino de bautismo no fué su tutor Viader sino Don Cristóbal Paxot, y que no nació en Naguabo en 1872 sino en San Juan de Puerto Rico el 18 de marzo de 1873, y que los referidos Garzot y Viader, con conocimiento de estos hechos, fueron quienes instaron aquellas diligencias al objeto de que José Paxot en aquel año 1895 apareciese con veinte y tres años de edad cumplidos.

7. En el mismo referido año 1895, siendo entonces menor de edad el dicho Don José Paxot, suscribió a favor del demandado Señor Garzot, un recibo o carta de pago, haciendo constar haber recibido de su deudor (el Señor Garzot) el importe del capital e intereses que éste le estaba adeudando por virtud de la hipoteca mencionada; y alegamos, como cierto, que José Paxot recibiera o no recibiera aquellas cantidades, ya del Garzot o ya de otra persona, no tuvo de ellas ningún beneficio, ni le fué útil recibirlas, ni se convirtieron nunca en su utilidad. Al efecto José Paxot no adquirió propiedad mueble o inmueble de ninguna clase en aquel año 1895, ni en los posteriores hasta su muerte ocurrida en 1899, ni tenía ningún dinero en el año 1896 al llegar a la mayor edad, ni en los posteriores hasta su muerte, ni realizó ningún contrato de compra, préstamo o de cualquiera otra clase. Y por ello alegamos: que si José Paxot recibió el importe de aquella deuda en el año de 1895, siendo entonces menor de edad, lo derrochó, o gastó o perdió antes de cumplir su mayor edad (año 1896), y antes de su muerte (año 1899).

8. En el pago de la deuda hipotecaria hecho por Garzot a José Paxot, siendo éste menor de edad (en el año 1895), según se ha explicado, no intervino el protutor de éste ni hubo autorización del consejo de familia, ni el dicho menor fué representado por persona alguna que supliera su incapacidad.

9. El importe de la deuda hipotecaria, en la fecha en que aparece que el demandado Garzot le hizo el pago al menor José Paxot (año 1895), ascendía entre capital e intereses a una suma de diez mil pesos, equivalentes a seis mil dollars.

Los intereses de esta cantidad, desde el año 1895 hasta el
año 1910, calculados al 12 por ciento anual, según se esti-
pularon en la escritura de hipoteca, ascienden a un montante
de diez mil dollars que sumados a los seis mil dollars de la
deuda, hacen un total de diez y seis mil dollars, cuya can-
tidad es la que los demandantes reclaman del demandado por
la presente demanda.

Y en virtud de tales alegaciones, que hemos copiado
textualmente, los demandantes suplicaron a la corte que se
sirviera dictar su sentencia declarando nulo cualquier pago
que el demandado Don Juan R. Garzot le hubiera hecho a
Don José Paxot Gragirena antes del 18 de marzo de 1896
sin la intervención del protutor de éste y sin la autorización
del consejo de familia; declarando vicioso especialmente el
pago hecho en el año 1895, según se ha referido en las
alegaciones, declarando que el demandado viene obligado a
pagar de nuevo a los demandantes el importe de aquella
deuda y los intereses hasta la fecha; condenando, en con-
secuencia, al demandado señor Garzot a pagar a los deman-
dantes la suma de diez y seis mil dollars, a que asciende hoy
aquel capital viciosamente pagado y sus intereses; e impo-
niéndole al demandado las costas de este pleito.

El demandado negó general y específicamente, todos y
cada uno de los hechos de la demanda y en oposición a los
mismos y como defensa y contestación, consignó lo siguiente:

1. En el pueblo de Naguabo, el día 27 de Mayo de 1895,
ante el Notario Don Marcelino Estevanez Nanclares, compa-
reció Don José Paxot Gragirena, industrial, casado, afir-
mando ser mayor de edad, y presentando al notario además
de su cédula personal No. 131, una copia certificada, que dicho
notario rubricó y le devolvió, de su partida de bautismo
librada por el Señor Cura ecónomo de Naguabo, de la cual
resultaba que dicho compareciente nació el día primero de
febrero de 1872; y con tal carácter confesó haber recibido a
su entera satisfacción de manos de Don Juan R. Garzot y

Romero, la suma de dos mil pesos moneda corriente en aquella fecha, en pago de igual cantidad en parte, de la suma de seis mil pesos, importe de un capital garantido con hipoteca constituída sobre la finca San Cristóbal, sita en el término municipal del mismo pueblo de Naguabo, otorgando a favor de dicho Sr. Garzot, la más eficaz carta de pago por dicha suma, más por los inteseses devengados y verificando, como consecuencia una cancelación parcial de dicho crédito hipotecario, en los términos que se consignan en la escritura de cancelación parcial de hipoteca, número 118 otorgada por los expresados Paxot en Naguabo, el dicho día 27 de mayo de 1895, ante el Notario Don Marcelino Estevanez Nanclares.

2. A la fecha del otorgamiento de la escritura mencionada en el hecho anterior, el mencionado Don José Paxot Gragirena, era un hombre casado, siéndolo con la demandante Doña María García Buxó mediante matrimonio canónico y solemne, verificado entre ambos, en la parroquia del pueblo de Naguabo el día 6 de octubre de 1892.

3. Don José Paxot Gragirena, vivió, hasta el día 14 de julio del año 1899, en cuyo día falleció, en el expresado pueblo de Naguabo.

4. Por escritura número doscientos veinte otorgada en la ciudad de Humacao a 26 de septiembre de 1895, ante el Notario Don Marcelino Estevanez Nanclares, por Don José Paxot Gragirena, confesó éste, haber recibido de Don Juan Garzot, la suma de cuatro mil pesos moneda corriente, por resto de capital de la hipoteca a que se hace referencia en el hecho primero de esta contestación, extendiendo carta de pago y verificando la cancelación total de dicho crédito hipotecario, tal y como aparece de los términos de la mencionada escritura. Al comparecer Don José Paxot ante el notario, presentó cédula personal y manifestó ser mayor de edad y hallarse en el pleno goce de sus derechos civiles y libre disposición de sus bienes.

5. En los archivos parroquiales, de las parroquias de San

Francisco y de Nuestra Señora de los Remedios, de la
ciudad de San Juan de Puerto Rico, no aparece que el día
18 de marzo de 1873, naciera Don José Paxot y Gragirena.
Y por el contrario, en oposición abierta y manifiesta con
este supuesto hecho, aparece al folio 238 del libro 24 de
partidas bautismales de la Parroquia de Nuestra Señora de
los Remedios, el nacimiento inscrito de un niño, que al ser
bautizado se le pusieron los nombres de Jaime Gregorio,
nacido el día 25 de mayo de 1873, hijo legítimo de Don Jaime
Paxot y Doña Adriana Gragirena, los cuales son los mismos
padres de don José Paxot Gragirena.

6. Según las investigaciones que hemos practicado, para
preparar esta contestación, el nacimiento de Don José Paxot,
hijo legítimo de Don Jaime Paxot y Doña Adriana Gragi-
rena, fué inscrito en virtud de un expediente eclesiástico,
que original existe en los archivos del notario eclesiástico,
del Obispado de esta Isla de Puerto Rico.

En el acto de la vista admitió el demandado íntegramente
las alegaciones primera, segunda, tercera y cuarta de la
demanda.

Admitió también la alegación quinta en el sentido de que
José Paxot Gragirena en 1895 era un menor de 23 años de
edad, pero no que dicho menor en aquella fecha no estaba
emancipado.

Admitió también el demandado el hecho sexto de la de-
manda, sólo en la parte que dice que el dicho José Paxot no
nació en Naguabo en febrero de 1872 sino en San Juan de
Puerto Rico en 18 de marzo de 1873; pero no en cuanto a los
demás extremos de dicho hecho sexto que se refieren a la
confabulación de Garzot y a la fecha del expediente.

Admitió también el demandado las alegaciones del hecho
séptimo de la demanda en cuanto dicen que Garzot era un
deudor hipotecario de Paxot, y en cuanto dicen que dichas
hipotecas fueron pagadas por Garzot a Paxot siendo éste
menor de 23 años de edad; pero niega los demás extremos

referentes a la utilidad o no utilidad que Paxot obtuvo recibiendo aquel dinero y demás extremos consignados en dicho hecho séptimo.

Admitió también el hecho octavo menos en cuanto dice que Paxot era un menor de edad incapacitado.

Admitió también el demandado el hecho noveno de la demanda, siempre que las cantidades (a que dice ascendían las hipotecas) coincidan con las escrituras hipotecarias que presentó el demandado como prueba.

Los demandantes admitieron todas las alegaciones de la contestación excepto la última que fué retirada por el demandado, y presentaron prueba documental y testifical, consistente la primera en una partida bautismal en la que consta que José Paxot Gragirena nació en San Juan, P. R. el 18 de marzo de 1873, dos partidas de defunción demostrativas de que los padres de José Paxot murieron con anterioridad al año de 1895, y en una escritura de cesión de crédito hipotecario otorgada a favor de José Paxot, y consistente la segunda en las declaraciones de María García y José González Darder. Los demandantes no presentaron prueba relativa a la confabulación alegada en el hecho 6º de su demanda.

El demandado presentó prueba documental consistente en el expediente eclesiástico sobre asentamiento de la partida de bautismo de José Paxot, tramitado y resuelto en el Obispado de Puerto Rico en 1895, y en las dos escrituras públicas a que se refieren los hechos 1, 2 y 4 de su contestación.

Con tales alegaciones y pruebas como base, la Corte de Distrito de Humacao; el 24 de marzo de 1911, dictó sentencia en favor del demandado; y contra dicha sentencia interpusieron los demandantes el presente recurso de apelación.

Los hechos relativos a la confabulación del demandado para hacer aparecer a José Paxot como mayor de edad cuando en realidad de verdad no lo era, han quedado descar-

tados completamente de este pleito, al ser negados por el demandado y al no presentar los demandantes prueba alguna sobre ellos.

La certeza del pago hecho por Garzot a Paxot, se admite en la demanda y se probó en el juicio. La confesión de Paxot ante el notario público que autorizó las escrituras de cancelación de hipoteca, ha quedado enteramente en pie.

El hecho de que José Paxot nació el 18 de marzo de 1873, fué admitido por el demandado y probado además por los demandantes.

En tal virtud, la única cuestión fundamental a resolver en este caso es la de si José Paxot Gragirena tenía o nó capacidad para otorgar dichas escrituras de cancelación de hipoteca que otorgó el 27 de mayo y el 26 de septiembre del año de 1895, por no haber cumplido en tales fechas los 23 años que la ley entonces vigente fijaba para entrar en la mayoridad.

Bajo dos aspectos ha sido presentada y puede considerarse esta cuestión:

1. ¿Estaba Paxot, a la fecha de las escrituras emancipado por razón de matrimonio, y si lo estaba, tenía facultades para cancelar una hipoteca constituída a su favor?

2. Atendidas todas las circunstancias de este caso concreto ¿deben considerarse válidas y eficaces las escrituras de cancelación de hipoteca?

Cuando se otorgaron las escrituras, Paxot era mayor de diez y ocho años y hacía ya tiempo que estaba casado con María García Buxó, madre de los demandantes. El matrimonio se celebró el 6 de octubre de 1892.

Los demandantes en el acto de la vista presentaron prueba de testigos tendente a demostrar que dicho matrimonio se había celebrado sin el consentimiento de su tutor y qué por tanto no había producido el efecto de entregar a Paxot la administración de sus bienes.

Considerados los artículos 45 del Código Civil español, tal

como regía en Puerto Rico, y 46 del propio Código, se concluye que no era al tutor sino al consejo de familia al que correspondía otorgar la licencia en este caso; y no habiéndose alegado ni probado que el consejo de familia dejara de conceder la licencia, se debe presumir que el matrimonio se celebró cumpliéndose con dicho requisito exigido por la ley entonces en vigor.

Casado, pues, legalmente Paxot, quedó de derecho emancipado.

Ahora bien, el Código Civil español, que es el aplicable a este caso, distingue dos clases de emancipación. Una que pudiéramos llamar *plena* que se obtiene cuando se arriba a la mayor edad, y otra que podría calificarse de *menos plena* que se alcanza por razón del matrimonio, o por concesión del padre o de la madre que ejerza la *patria potestad*.

La emancipación menos plena habilita al menor para regir su persona y bienes como si fuera mayor, pero con ciertas restricciones que la misma ley le impone. Estas restricciones, en el caso de emancipación por razón de matrimonio, de acuerdo con lo prescrito en el artículo 315 del Código Civil español, están contenidas en el artículo 59 y en la regla 3ª. del 50 del propio cuerpo legal.

El artículo 59, dice así:

"El marido es el administrador de los bienes de la sociedad conyugal, salvo estipulación en contrario y lo dispuesto en el artículo 1384.

"Si fuere menor de diez y ocho años, no podrá administrar sin el consentimiento de su padre; en defecto de éste, sin el de su madre; y a falta de ambos, sin el de su tutor. Tampoco podrá comparecer en juicio sin la asistencia de dichas personas.

"En ningún caso, mientras no llegue a la mayor edad, podrá el marido, sin el consentimiento de las personas mencionadas en el párrafo anterior, tomar dinero a préstamo, gravar ni enajenar los bienes raíces."

Se han emitido diferentes opiniones acerca de si es aplicable también a los casos de emancipación por matrimonio el

artículo 317 del Código Civil español, pero la dirección general de los registros en su resolución de 14 de diciembre de 1896 y en otras más, y el Tribunal Supremo de España en su sentencia de 19 de junio de 1906, han decidido que no lo es. Aceptando este criterio, veamos si un menor emancipado por razón de matrimonio puede cancelar por si solo una hipoteca constituída a su favor.

El legislador al especificar lo que se prohibe hacer al menor sin el consentimiento de las personas que indica, prescribe que no podrá *gravar ni enajenar los bienes raíces.*

Una hipoteca es un derecho real sobre un bien inmueble, y está clasificada en el Código también como un bien inmueble. (Art. 334, No. 10, del Código Civil español.) Cancelar una hipoteca es declararla extinguida, desprenderse de ella, y por consiguiente, enajenarla.

"Enajenación es el acto por el cual se transfiere a otro la propiedad de alguna cosa a título lucrativo, como la donación, o a título oneroso, como la venta o permuta. Esta palabra tomada en una significación más extensa, comprende también la enfiteusis, la prenda, la hipoteca, y aun la constitución de servidumbre sobre un fundo. Síguese de aquí que el que no puede enajenar una cosa, no la puede tampoco obligar, ni sujetar con hipoteca, ni imponerle servidumbre. 'Aquel a quien es defendido de non enagenar la cosa, dice la ley 10, tít. 33, part. 7ª., non la puede vender, nin camiar, nin empeñar, nin puede poner servidumbre en ella, nin darla a censo a ninguna de aquellas personas a quien es defendido de la enagenar.' (2 Escriche, 803.)"

Y esta misma Corte Suprema de Puerto Rico, por medio de su Presidente Hernández, se ha expresado así: "La cancelación de un crédito hipotecario entraña un verdadero acto de enajenación, pues por aquélla se desapodera el acreedor de un derecho real que le pertenece, y por tanto, no puede otorgarse sin mandato expreso." (*Benítez Hermanos* v. *El Registrador de la Propiedad,* 17 D. P. R., 237.)

La cuestión en su primer aspecto queda, pues, resuelta de este modo: Paxot a la fecha de las escrituras, era un menor emancipado por matrimonio, pero no tenía facultades por razón de tal hecho solamente para cancelar hipotecas constituídas a su favor.

Consideremos la cuestión bajo su segundo aspecto.

Forma parte de la transcripción de autos, el expediente eclesiástico tramitado en el Obispado de Puerto Rico en el año de 1895, a instancias de Paxot, relativo al asentamiento de su partida bautismal. Dicho expediente se inició por un escrito firmado por José Paxot y Gragirena y fechado el 13 de febrero de 1895, que dice así:

"Don José Paxot, natural y vecino de este pueblo, hijo legítimo de Don Jaime y Doña Adriana Graxirena, A. V. I. con el debido respeto hago presente: que necesitando la partida bautismal para asuntos de familia, se han practicado vivas diligencias en el archivo de esta parroquia, y no ha sido posible hallarla.

"En su consecuencia, suplico A. V. J. se digne dar las disposiciones oportunas para remediar tan grave mal.

"Por esta gracia le viviré eternamente agradecido y rogaré a Dios guarde su preciosa vida muchos años."

Por el Obispado se dictó una orden comisionando al Cura de Naguabo para que recibiera los testigos que la parte presentara en justificación del año, mes y día del nacimiento y bautismo del recurrente. Y, en efecto, ante el cura declararon los testigos José Catarinau y Juan Martínez quienes manifestaron sustancialmente que conocían a Don José Paxot, hijo legítimo de Don Jaime y de Doña Adriana Gragirena, y que les constaba que era natural de Naguabo, que había nacido el 1º. de febrero de 1872 y que se había bautizado en la parroquia de su nacimiento.

El cura certificó además que había examinado los libros del archivo y que no se hallaba registrado en ellos la partida bautismal de Paxot. Y el Obispado con tales antecedentes como base, resolvió la instancia del causante de los demandantes, en la siguiente forma:

"Puerto Rico, marzo 13 de 1895. Vista la instancia de Don José Paxot, pidiendo el asentamiento de su partida de bautismo; resultando justificado que José nació el primero de febrero de 1872 y fué bautizado en la Parroquia de Naguabo por el Pbro. Don Pedro Meléndez, como hijo legítimo de Don Jaime Paxot y Doña Adriana Graxirena, siendo padrinos D. Alejandro Viader y Doña Asunción Ramírez de Arellano; abuelos paternos: Don Tito y Doña Carmen Ramírez, maternos: Don José y Doña Asunción Ramírez de Arellano: se autoriza al Cura de Naguabo, para que tomando los datos necesarios acerca del día del bautismo, asiente la partida en el libro y folio la que debía asentarse, nota que exprese el libro y folio en que hoy se asiente, a fin de facilitar su busca en todo tiempo. (Firmado) Lcdo. Franco Delgado. (Firmado) José C. Viñals."

Con arreglo a la legislación vigente en equella época, la autoridad eclesiástica tenía facultades para tramitar y resolver el expediente de que se ha hecho mérito, y su resolución era en tal virtud válida y eficaz. La verdad legal con respecto al nacimiento y bautismo de Paxot Gragirena quedó pues, establecida, y en tales circumstancias fué que Paxot Gragirena otorgó los documentos cuya nulidad se pretende.

La comparecencia de las partes en dichos documentos se hizo constar así: En el de 27 de mayo:

"Comparecen Don José Paxot y Gragirena, industrial, y Don Juan R. Garzot y Romero, propietario, los dos mayores de edad, casados, de esta vecindad y provistos en el corriente ejercicio de cédulas personales de séptima y cuarta clase, número ciento treinta y uno y uno respectivamente; presentándome además el Sr. Paxot para acreditar su mayor edad una copia certificada que rubrico y le devuelvo, de su partida de bautismo librada por el Sr. Cura Ecónomo de este pueblo Don Pedro Casado, el primero de abril último, en un pliego del sello undécimo, de la cual resulta que el interesado nació el día primero de febrero de 1872: manifiestan los comparecientes hallarse en pleno goce de sus derechos civiles y libre disposición de sus bienes, por todo lo cual considero a mi juicio que tiene la capacidad legal necesaria para otorgar esta escritura de cancelación parcial de hipoteca, y en tal virtud libremente *exponen:*"

Y en el de 26 de septiembre:

"Comparecen Don José Paxot y Gragirena, industrial, y Don Juan R. Garzot y Romero, propietario, los dos mayores de edad, casados, vecinos de Naguabo y provistos en el correspondiente ejercicio de sus cédulas personales de séptima y cuarta clase, números ochenta y cinco y uno respectivamente. Manifiestan hallarse en el pleno goce de sus derechos civiles y libre disposición de sus bienes, por todo lo cual considero a mi juicio que tienen la capacidad legal necesaria para otorgar esta escritura de cancelación total de hipoteca y en tal virtud libremente *exponen:*"

A la fecha del otorgamiento de las escrituras, Paxot tenía, según la documentación que él mismo presentara al efecto, cumplidos 23 años, y, según la documentación presentada por sus herederos en este pleito, cumplidos 22 años, o sea un año más de lo que la ley requiere actualmente para la mayoría de edad. Paxot era en aquel entonces además un hombre casado, con hijos, con derecho a administrar sus bienes, y murió cerca de cuatro años después de otorgadas las escrituras, sin que nada reclamara en contra del demandado. Esta reclamación se ha interpuesto diez años después de su muerte, por sus herederos. No hay la más leve prueba que demuestre que el demandado conociera que faltaban a Paxot algunos meses para llegar a la mayoridad, ni que Paxot recibiera perjuicio alguno con la transacción verificada.

¿Sería posible, bajo tales circumstancias, que un tribunal de justicia dictara ahora una sentencia condenando al demandado a pagar nuevamente su deuda, ya satisfecha, con más los intereses, ascendente todo a unos diez y seis mil pesos?

Una respuesta negativa se impone, respuesta que está conforme con la jurisprudencia del Tribunal Supremo de España consignada en su sentencia de 27 de abril de 1860, al establecer que "son válidas las ventas de bienes raíces hechas por menores de edad, cuando fingen ser mayores de 25 años, y por la circumstancia de estar próximos a esa edad, ser casados, y tener la administración de sus bienes, u otras especiales que en los mismos concurran puedan creer los que intervinieron en el contrato que son mayores de edad."

La única diferencia que pudiera notarse entre el caso resuelto por el Tribunal Supremo de España y éste que resolvemos, es que aquí no se ha demostrado que Paxot *fingiera* que era mayor de edad al comparecer a otorgar las escrituras, pero si bien esto es así, resulta probado que Paxot personalmente instó el asentamiento de su partida bautismal en la cual se hizo constar que su nacimiento había ocurrido el 1 de febrero de 1872; que personalmente también concurrió en dos ocasiones ante notario público y afirmó que era mayor de edad presentando al efecto una copia certificada de su partida de bautismo y su cédula de vecindad, y que, por tanto, consciente o inconscientemente indujo al demandado Garzot a considerarlo como mayor de edad y a pagarle su deuda, sin que pueda decirse que el demandado al proceder así, bajo todas las circunstancias de este caso, dejara de actuar como varón prudente.

La cuestión en su segundo aspecto, queda pues, resuelta de este modo: atendidas todas las circunstancias que concurren en este caso concreto, deben considerarse válidas y eficaces las escrituras de cancelación de hipoteca a que se refiere este pleito, y en tal virtud que el pago hecho por Garzot de buena fe a Paxot que estaba en posesión de su crédito, liberó al primero de la deuda que con el segundo tenía contraída. (Art. 1164 del Código Civil Español y 1132 del Revisado.)

Habiendo llegado a la anterior conclusión, no es necesario que entremos en el estudio de la cuestión de prescripción argumentada ampliamente por los abogados de ambas partes.

La sentencia apelada debe confirmarse y declararse sin lugar el recurso establecido.

*Confirmada*

Jueces concurrentes: Sres. Presidente Hernández y Asociados MacLeary, Wolf y Aldrey.