Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| LUNA COMMERCIAL II, LLC<br><br>Demandante-Apelante<br><br>Vs.<br><br>CENTRO DE DESARROLLO Y SERVICIOS ESPECIALIZADOS, INC.; ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>Demandados-Apelados | KLAN202300823 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Civil Núm. MZ2021CV00229<br><br>SOBRE: COBRO DE DINERO Y EJECUCIÓN DE PRENDA E HIPOTECA |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de octubre de 2023.

Comparece ante nos la Parte Apelante, Luna Commercial II, LLC (en adelante, Parte Apelante) para solicitarnos que se revoque la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez, el 22 de julio de 2023 y notificada en esa misma fecha, en la cual se declara Ha Lugar la *Moción de Desestimación*.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, se confirma la *Sentencia* mediante los fundamentos que expondremos a continuación.

I

El 16 de diciembre de 1999, el Estado Libre Asociado de Puerto Rico (en adelante, ELA) a través del Departamento de Transportación y Obras Públicas, le cedió al Centro de Desarrollo y Servicios Especializados (en adelante, CDSE) un solar localizado en

el Sector Las Mesas del municipio de Mayagüez por el precio nominal de $1.00. Esta cesión se realizó conforme a la Resolución Conjunta del Senado, núm. 594 del 20 de octubre de 1999. La Escritura de Cesión establece que CDSE utilizará el predio para desarrollar y expandir servicios terapéuticos y para construir una escuela para niños de educación especial. Asimismo, indica que el cesionario no puede **ceder**, arrendar, vender, **enajenar** o de ninguna otra forma disponer de todo o parte del inmueble cedido. (Énfasis Nuestro). También señala que en caso de que la propiedad se dedique a propósitos distintos a los esbozados o que el CDSE intente disponer de los terrenos en su totalidad o en parte a favor de terceros, los terrenos con sus mejoras revertirán al ELA, libre de costo.

Así las cosas, el 6 de abril de 2004, el CDSE suscribió un "*Contrato de Préstamo de Construcción y Modificación a Financiamiento Permanente*" con Westernbank Puerto Rico, por la suma de $924,000.00. En esa misma fecha pactó un *Acuerdo de Gravamen Inmobiliario* ante el Notario Público Adrián J. Hilera Torres, en el cual entregó en prenda, como garantía del préstamo, un pagaré hipotecario por la misma suma con vencimiento a la presentación. Para garantizar el pago del principal adeudado, así como en garantía del pago de los créditos hipotecarios accesorios, de las costas, gastos, intereses y honorarios de abogado, el CDSE constituyó una primera hipoteca en virtud de la escritura 321 ante el mismo notario. Esta se encuentra inscrita en el Registro de la Propiedad.

En adición, el CDSE acordó un "*Contrato de Cesión*" mediante el cual cedió a favor de Luna Commercial II, LLC, todos sus derechos sobre los planos, endosos, permisos, autorizaciones y contrato de construcción. El 31 de julio de 2007, el CDSE también suscribió una "Línea de Crédito Comercial a Corporaciones" por la suma de $150,000.00. En esta misma fecha el CDSE convino a un "*Acuerdo*

*de Gravamen Inmobiliario*", en el cual entregó en prenda como garantía del préstamo, el pagaré hipotecario del 6 de abril de 2004. Posteriormente, el 30 de septiembre de 2009, la Parte Apelante, firmó un pagaré por la suma de $150,000.00 ante la Notario Público, Ester Rebeca Luzón Colón.

Así las cosas, el 18 de febrero de 2021, la Parte Apelante presentó una *Demanda,* contra el CDSE sobre cobro de dinero y ejecución de hipoteca. Alegó que la Parte Apelada incumplió con sus obligaciones y que la deuda estaba vencida. Asimismo, reclamó la suma de $308,848.65 por concepto de principal más el pago de sus correspondientes intereses. El 17 de mayo de 2021, el CDSE presentó su *Contestación a Demanda,* en la cual aceptó haber suscrito los acuerdos, pero negó la cantidad adeudada. El CDSE también explicó que su titularidad está condicionada por el ELA, conforme a la Escritura de Cesión, por lo que entiende que este es parte indispensable en la controversia.

Luego de varios trámites procesales, el 12 de julio de 2022, la Parte Apelante, presentó una Demanda Enmendada en la que incluyó al ELA como parte del proceso judicial. El 6 de febrero de 2023, el ELA presentó una *Moción de Desestimación.* En esta solicitud el Estado alegó que: (1) la propiedad fue cedida por el precio de $1.00 en el Cerro Las Mesas, en Mayagüez; (2) el propósito era beneficiar a una clase desventajada como son los niños de educación especial; (3) la cesión estaba condicionada a que el cesionario no cediera, arrendara, vendiera, enajenara o dispusiera de la propiedad, en todo o en parte; y (4) la Resolución Conjunta establece que cualquier transacción o negocio jurídico en violación de la condición, es nulo y no confiere ningún derecho legal. También le solicitó al Foro Primario que ordenara al Registro de la Propiedad de Mayagüez, la anulación de la inscripción de la hipoteca constituida el 6 de abril de 2004.

El 3 de mayo de 2023, la Parte Apelante presentó su *Oposición a Solicitud de Desestimación.* En esta, indicó lo siguiente: (1) en este caso no se ha establecido, que tomando como ciertas las alegaciones de la demanda, la demandante no tiene derecho a remedio alguno; (2) la pretensión del ELA de hacer valer unas condiciones restrictivas mediante la desestimación de la demanda y cancelación de la hipoteca, sin el debido proceso de ley, no es el remedio provisto por las condiciones restrictivas; (3) en el presente caso no existe controversia y no se han realizado alegaciones en cuanto a que Luna Comercial II, LLC, haya cedido, arrendado, vendido, enajenado o dispuesto de la propiedad; (4) no se ha realizado alegación de que el CDSE haya incumplido con su encomienda y (5) la prohibición de enajenar dispuesta en la escritura no incluye expresamente una prohibición de gravar o hipotecar.

Mas adelante, el 12 de junio de 2023, la Parte Apelante presentó una *Moción Suplementando La Moción en Oposición a Solicitud de desestimación.* En ésta señaló que en el caso ante nuestra consideración aplica la presunción de que la hipoteca es correcta y ejecutable al estar inscrita en el Registro de la Propiedad. A su vez, enfatizó que el ELA está obligado a pasar prueba de que esta carece de efecto legal por ser nula o anulable. Por último, indicó que, en caso de que el Foro Primario entienda que la hipoteca es nula, se le debe proveer la oportunidad de levantar la defensa de incuria, pues el Estado conoce la existencia de la hipoteca desde el 2004.

Luego de varias incidencias procesales, el Tribunal de Primera Instancia emitió una *Sentencia en* la cual declaró Ha Lugar la *Moción de Desestimación.* De igual forma, incorporó por referencia a la *Sentencia,* los argumentos presentados por el ELA y el Departamento de Transportación y Obras Públicas. La parte apelante presentó oportunamente una Moción de Reconsideración

el 7 de julio de 2023. En esta solicitud añadió que: (1) al incorporar los argumentos realizados por el ELA, el Foro Primario determinó que la hipoteca fue un acto contrario a la ley, sin establecer cuál; (2) el contrato y los pagarés quedaron sin vigencia y no se puede exigir su cumplimiento, en virtud de la *Sentencia;* y (3) que las defensas relacionadas a las condiciones restrictivas no pueden ser dilucidadas a través de una moción de desestimación. También argumentó que, el efecto de la *Sentencia* es convertir una deuda líquida y exigible en una deuda incobrable. El 16 de agosto de 2023, el Tribunal de Primera Instancia declaró No Ha Lugar a dicha petición.

Inconforme con lo anteriormente resuelto, la Parte Apelante acudió a este Tribunal mediante el recurso de epígrafe, en el que señaló los siguientes errores:

> *(A) Erró el TPI al declarar Ha Lugar la Moción de Desestimación presentada por el ELA y desestimar con perjuicio la causa de acción sobre cobro de dinero, en violación a nuestro derecho constitucional de propiedad, así como a un debido proceso de ley y en claro abuso de su discreción.*
>
> *(B) Erró el TPI al declarar Ha Lugar la Moción de Desestimación presentada por el ELA y desestimar la demanda, sin haber tomado como ciertos las alegaciones de la demanda, en violación al debido proceso de ley y en claro abuso de su discreción.*
>
> *(C) Erró el TPI al declarar Ha Lugar la Moción de Desestimación presentada por el ELA y desestimar la demanda, sin haber dilucidado conforme a derecho la validez y alcance de las Condiciones Restrictivas, en violación al derecho constitucional de propiedad y a un debido proceso de ley y en claro abuso de su discreción.*
>
> *(D) Erró el TPI al no determinar según requerido por las exigencias del debido proceso de ley que el ELA es, o era, una parte indispensable a este pleito, obviando el contenido de la Demanda Enmendada en la que el demandante clasificó al ELA como parte indispensable, sin un debido proceso de ley y en claro abuso de su discreción.*

## II

### A. Moción de Desestimación

La Regla 10.2 de Procedimiento Civil permite que un demandado solicite la desestimación de la causa de acción en su contra, antes de contestarla, si de las alegaciones de la demanda surge claramente que alguna de las defensas afirmativas prosperará. 32 LPRA Ap. V, R. 10.2*; Conde Cruz v. Resto Rodríguez et al.,* 205 DPR 1043, 1065 (2020). La Regla provee las siguientes defensas: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; y (6) dejar de acumular una parte indispensable. Regla 10.2 de Procedimiento Civil, *supra.*

Al evaluar una moción de desestimación, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y, a su vez, considerarlos de la forma más favorable a la parte demandante. *López García v. López García*, 200 DPR 50, 73 (2018). Esta doctrina solo es aplicable a los hechos que, de su faz, no dan margen a dudas. *First Fed. Savs. v. Asoc. de Condómines,* 114 DPR 426, 432 (1983). El tribunal también dará por admitidas las inferencias que surjan de los hechos. *Montañez v. Hosp. Metropolitano,* 157 DPR 96, 105 (2002). Las admisiones se tomarán en consideración únicamente para propósitos de resolver la moción de desestimación. Id. pág. 103. En consecuencia, el demandado deberá probar que el demandante no tiene derecho a remedio alguno, aun cuando se interprete la demanda de la forma más liberal. *López García, supra.*, pág. 70.

En el caso de *Ashcroft v. Igbal*, la Corte Suprema de los Estados Unidos explicó que para evaluar si las alegaciones en una

demanda son factibles y no meramente especulativas, los tribunales deben llevar a cabo un análisis contextual de dos etapas. *Ashcroft v. Igbal* 556 US 662, 678 (2009). En la primera etapa se requiere considerar como ciertos los hechos en la demanda con excepción de las alegaciones concluyentes, las conclusiones de derecho y los hechos genéricos. *Id.* La segunda etapa consiste en determinar si con base en las alegaciones bien fundamentadas en la demanda, el demandante ha establecido una reclamación que merezca la concesión de un remedio. *Id.* pág. 679. El tribunal decidirá si en vista de todas las circunstancias del caso, el demandante ha presentado una reclamación factible o si la causa de acción debe ser desestimada. *Id.*

**B. Parte Indispensable**

Las Reglas de Procedimiento Civil regulan la figura de parte indispensable en una controversia. Específicamente, la Regla 16.1 dispone que las personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según sea el caso. 32 LPRA Ap. V, R. 16.1. El interés común debe ser uno real e inmediato, no especulativo ni a futuro. *RPR & BJJ Ex Parte,* 207 DPR 389, 408 (2021). Esta norma se fundamenta en dos principios esenciales, que son: la protección constitucional, que impide que una persona sea privada de su libertad y propiedad sin un debido proceso de ley y (2) la necesidad de emitir un decreto judicial completo. *Allied Mgmt. Group v. Oriental Bank,* 204 DPR 374, 389 (2020).

Nuestro Tribunal Supremo ha expresado que una parte indispensable es aquella de la cual no se puede prescindir, pues su presencia es necesaria para adjudicar correctamente las cuestiones litigiosas. *Allied Mgmt. Group v. Oriental Bank, supra.,* pág. 389. Un

decreto final no puede ser emitido sin incluir a todas las partes indispensables, pues se lesionarían radicalmente los derechos de las partes. *Deliz et als. v. Igartúa et als.,* 158 DPR 403, 433 (2003). La falta de parte indispensable es un planteamiento de alta relevancia, el cual puede ser traído a un pleito, en cualquier parte del proceso. *RPR & BJJ Ex Parte, supra.,* pág. 390. De igual modo, la ausencia de una parte esencial priva al tribunal de jurisdicción para resolver la controversia. *Id.* pág. 407.

Por otro lado, es importante enfatizar que la interpretación para determinar quién constituye parte indispensable tiene un alcance restringido, pues en pocas ocasiones es imposible resolver la controversia sin la presencia de la parte ausente. *Id.* pág. 408. Esta determinación dependerá de los hechos específicos de cada caso. *López García v. López García, supra.,* 52. Así pues, le corresponde a los tribunales realizar un análisis juicioso sobre los derechos de las partes que no están presentes. *Id.* pág. 66. En resumidas cuentas, el propósito primordial de la Regla 16.1, supra, es proteger a las personas ausentes de los efectos perjudiciales que pudiera tener la resolución del caso sin la presencia de ellos y evitar la multiplicidad de pleitos mediante un remedio efectivo y completo. *Granados v. Rodríguez Estrada II,* 124 DPR 593, 604 (1989); *Hernández Agosto v. Romero Barceló,* 112 D.P.R. 407, 412-413 (1982).

**C. Prohibición de Enajenar**

Las prohibiciones de enajenar se definen como la imposibilidad de transmitir, a título oneroso o gratuito, un derecho o una cosa, en virtud de pacto, precepto legal o decisión judicial o administrativa. *Iglesia Católica v. Registrador,* 96 DPR 511, 519-520 (1968). También pueden ser vistas como manifestaciones de voluntad hechas en negocio jurídico por la que se niega a alguien

la facultad dispositiva sobre bienes o derechos normalmente enajenables. *Id.* En la determinación de la eficacia jurídica de una prohibición legal de disponer de una propiedad, predomina la norma de que ellas deben responder a un interés jurídico o una causa o razón justificada. *Id.* pág. 533.

Por otra parte, la hipoteca es un derecho real que sujeta directa e inmediatamente los bienes y derechos sobre los cuales se impone, cualquiera que sea su titular, al cumplimiento de la obligación para cuya seguridad fue constituida. 30 LPRA § 6081. Solo pueden ser objeto de contrato de hipoteca los bienes inmuebles y los derechos reales enajenables. *Bco. Popular v. Registrador, 181 DPR 663, 672-673 (2011).* Cuando la obligación principal está vencida, los bienes sujetos a la hipoteca pueden ser enajenados.[1] 31 LPRA § 5002. Los créditos hipotecarios pueden ser cedidos o enajenados a terceros en todo o en parte. 31 LPRA § 5045. Dado a que la hipoteca es un derecho real de realización de valor, su titular tiene la capacidad para exigir la enajenación de la cosa que se dio en garantía. *Bco. Popular v. Registrador*, supra., pág. 673. Por consiguiente, es esencial que quien constituya una hipoteca sobre sus bienes tenga la libre disposición de estos. *Id.*

Nuestro Tribunal Supremo ha expresado que el acto de enajenación comprende la prenda, la hipoteca y la servidumbre. *García et al. v. Garzot,* 18 DPR 866, 872 (1912). Asimismo, ha manifestado que la cancelación de una hipoteca constituye un acto de enajenación. *Grillo v. Registrador*, 62 DPR 679, 688 (1943); *González v. Registrador de San Juan,* 37 DPR 868, (1928). Por consecuente, el que no está autorizado a enajenar un bien inmueble, no puede sujetarlo con hipoteca. *García et al. v. Garzot, supra.,* pág. 872.

---

[1] Se cita el Código Civil anterior por ser el que aplica a nuestra controversia.

III

En el presente caso, la Parte Apelante nos solicita que revoquemos la determinación del Tribunal de Primera Instancia en la que declara Ha Lugar *la Moción de Desestimación.*

Los primeros tres errores están estrechamente relacionados, por lo tanto, se abordarán de manera conjunta en la discusión. La Parte Apelante señala que el Foro Primario abusó de su discreción al declarar Ha Lugar la Moción de Desestimación y (1) desestimar con perjuicio la causa de acción sobre cobro de dinero (2) no tomar como ciertos las alegaciones de la demanda en violación al debido proceso de ley y (3) no haber dilucidado la validez y alcance de las Condiciones Restrictivas. No le asiste la razón. Veamos por qué.

Según las Reglas de Procedimiento Civil, *supra,* una parte puede solicitar la desestimación de la causa de acción cuando el demandante deja de exponer una reclamación que justifique la concesión de un remedio. 32 LPRA Ap. V, R. 10.2. De igual manera, el demandado debe probar que el demandante no tiene derecho a ningún tipo de reparación. *López García v. López García, supra.,* pág. 70. Le corresponde al tribunal tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos de la forma más favorable a la parte demandante. *López García v. López García,* supra., pág. 73.

Surge del expediente de nuestro caso que, el ELA cedió por un dólar al CDSE un solar localizado en el municipio de Mayagüez con la condición de que éste no fuera cedido, arrendado, vendido o enajenado. La propiedad debía ser utilizada exclusivamente para proveer servicios terapéuticos para niños de educación especial. Al cabo de varios años, el CDSE constituyó una hipoteca sobre el predio. Posteriormente, dejó de realizar sus pagos y Luna Commercial II, LLC, presentó una demanda para ejecutar dicha hipoteca. El Foro Primario, luego de tomar como ciertos los hechos

alegados en la demanda, entendió que no se le puede proveer un remedio a la Parte Apelante, ya que la Escritura de Cesión expresamente indica lo siguiente:

> Esta cesión está condicionada a que el cesionario no podrá ceder, arrendar, vender o enajenar o de ninguna otra forma disponer de todo o parte del inmueble aquí cedido.
>
> Acuerdan las partes que el título de propiedad revertirá al Cedente en caso de que la propiedad se dedique a otros fines que no sean el desarrollar y expandir sus instalaciones físicas, ampliar los servicios terapéuticos y construir una escuela para niños de educación especial. Si los comparecientes de la segunda parte intentan disponer de los terrenos en su totalidad o en parte a favor de terceros, en dichos casos los terrenos como las mejoras, revertirán libre de costo al Estado Libre Asociado de Puerto Rico.[2]

Por consiguiente, a tenor con lo anterior, el terreno no estaba sujeto a ser enajenado, cedido o de cualquier otra forma ser dispuesta. De lo contrario, esta pasaría a manos del Estado, libre de costo. Debido a la prohibición de enajenar, resulta evidente que el CDSE estaba impedido de hipotecar y de cualquier otra manera disponer del solar, pues, la misma resulta en que se revierta automáticamente al Estado y la hipoteca sea nula. Por lo tanto, aun tomando como ciertas las alegaciones de la demanda e interpretándolas de la manera más favorable, no podemos concederle el remedio solicitado a la Parte Apelante debido a que CDSE no poseía libre disposición del terreno y, en su consecuencia, la hipoteca es nula e inejecutable. Así pues, el Tribunal de Primera Instancia actuó correctamente al desestimar la demanda. Ahora bien, lo anterior no impide que la Parte Apelante inste por separado una acción de cobro de dinero por vía ordinaria para recobrar su deuda contra CDSE.

---

[2] Véase apéndice del recurso KLCE202300823, Pág. 159.

Por otro lado, la Parte Apelante alega que el Tribunal de Primera Instancia erró al no determinar si el ELA es parte indispensable en el caso. Esto no es así, veamos por qué.

Una parte indispensable es aquella sin la cual no puede dictarse un decreto, pues es necesaria para adjudicar acertadamente la controversia. *Allied Mgmt. Group v. Oriental Bank, supra.,* pág. 389. Como mencionamos anteriormente, surge del expediente que hubo una Escritura de Cesión entre el Estado y el CDSE. Dicha escritura contiene varias condiciones restrictivas y, a su vez, asevera que, de no cumplir con estas, la propiedad revierte al estado. Así pues, podemos concluir que el ELA es parte indispensable en el presente caso, ya que sus derechos se ven afectados por este dictamen y su interés es uno real, concreto y no basado en conjeturas. Además, es importante destacar que, la propia Parte Apelante enmendó su demanda para incluir al Estado, reconociendo que, al existir la Escritura de Cesión, este tenía interés en la controversia.

IV

Por los fundamentos antes esbozados, los cuales hacemos formar parte de este dictamen, confirmamos la *Sentencia* emitida por el Tribunal de Primera Instancia.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones