María R. Delgado de Ramírez Cuerda, demandante y apelante, *v.* Enrique Marchese Lajara, demandado y apelado.

No. 5487.—*Sometido:* Junio 9, 1931. *Resuelto:* Diciembre 20, 1932.

*Ildefonso Freyre,* abogado de la apelante; *José D. Rodríguez,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

María R. Delgado de Ramírez Cuerda inició este pleito por demanda archivada el 1º de julio de 1927 en la Corte de Distrito de Mayagüez. En ella alegó que era dueña por herencia de una casa situada en Lares que describe y que desde el año de 1914 el demandado Enrique Marchese la ocupa sin derecho, ni título alguno, de mala fe, ilegalmente y contra la voluntad de la demandante.

El demandado excepcionó la demanda y solicitó el traslado del pleito a la corte de distrito del distrito en que estaba radicado el inmueble que se trataba de reivindicar: Aguadilla. El traslado fué decretado y la Corte de Distrito de Aguadilla declaró sin lugar la excepción del demandado. Contestó entonces éste negando generalmente los hechos de la demanda que no está jurada y alegando como materia nueva constitutiva de oposición que el demandado es dueño de la casa y solar que describe situados en Lares; que hubo el solar por compra al municipio y la casa la construyó de su peculio; que una casa en estado ruinoso que existió años antes en el solar, tiene el demandado entendido que fué vendida por la demandante; que vendió el inmueble a Pablo Calcerada y lo readquirió después.

No hay duda de que ambas alegaciones se refieren a la misma propiedad. Se advierten, sin embargo, diferencias en la descripción. Por ejemplo, en la demanda se describe el solar como de 11 metros de frente por 36 de fondo, y en la contestación como de 12.50 metros de frente por 15 de fondo. A la casa se le da en la demanda un frente de 10.50 metros y un fondo de 19 metros, y en la contestación se la describe como de 11.50 metros de frente y 14 metros de fondo. Tanto en la demanda como en la contestación se dice que la casa es

de altos y bajos especificándose en la demanda que los bajos son de mampostería, maderas y zinc y los altos de madera estando techada antes de tejas de barro y ahora de zinc. En la contestación no se expresa el material de que está construída la casa, indicándose sólo que el techo es de zinc.

. Trabada así la contienda, fué el pleito a juicio.

La prueba de la parte demandante consistió en su propia declaración, en las declaraciones de José D. Irizarri, Francisco Marcano, Monserrate Delgado, Pedro Aramburu, Ramón Alicea, J. B. Soto y Arcadio Ramírez Cuerda, y en copia del testamento de doña Agustina González, en el cual actuó como uno de los testigos el demandado.

Demuestra el testamento que doña Agustina legó a su nieta la demandante la nuda propiedad de la casa que se describe en la demanda y tienden a demostrar las declaraciones de los testigos que muerta la abuela en 1912 pasó la nieta a actuar como dueña en pleno dominio de la cosa.

La nieta declaró a este respecto que tomó en efecto posesión de la casa, que doña Cándida Salcedo vivía en los altos y en los bajos había una imprenta y una barbería y que todos le pagaban los alquileres a ella; que estuvo en posesión hasta mayo de 1914; que después de 1914 el·que ha tenido la posesión es Marchese, el demandado; que no le vendió a Marchese ni ha cedido sus derechos a persona alguna. Declaró también la demandante que personalmente y por su esposo ha requerido varias veces a Marchese para que le restituya la posesión y él se ha negado. No explica cómo fué que Marchese entró en posesión.

Tiende también a demostrar la prueba testifical de la demandante que la casa descrita en la demanda valdría en 1914 como un par de mil dólares y es la misma que se describe en la contestación habiendo sido objeto de algunas variaciones y reparaciones pero no de una reconstrucción.

Varias veces en el curso de la prueba testifical surgió la cuestión de la edad de la demandante, pero no se puso énfasis

decisivo en ella. Al nombrarse en el testamento a la nieta no se consignó su edad.

Así las cosas, comenzó a practicar su prueba el demandado, consistente en su propia declaración y en las de los testigos José León Jr., Baltazar Márquez, Bernardo Suau, y la demandante, y en varias copias de escrituras públicas que mencionaremos al referirnos directamente a ellas. ¿Qué demostró?

La documental lo que sigue:

Que el 1° de octubre de 1913 y ante el notario Paz Urdaz se verificaron las operaciones divisorias del caudal relicto por doña Agustina González. Entre los otorgantes figura la demandante que se describe así: "Doña María Ramona Delgado Santiago, de veinte y un años cumplidos de edad, soltera, sin profesión, vecina de Lares", y en ellas se le adjudicó la nuda propiedad del inmueble urbano (la casa en cuestión) valorado en $1,200. El notario asegura que leyó la escritura a los otorgantes quienes mostraron su conformidad y la ratificaron y firmaron;

Que el 18 de abril de 1914 comparecieron ante el notario Acevedo don Delfín Delgado y la demandante que se menciona como "doña María Ramona Delgado Santiago, de veintiún años de edad, dedicada a las faenas domésticas, vecina de Lares, casada con don Angel Rivera". El notario aseguró que conocía a los otorgantes teniendo a su juicio la capacidad legal necesaria para otorgar el documento por virtud del cual Delfín Delgado renunció a favor de su hija la otra compareciente el derecho de usufructo que sobre la casa en cuestión se le otorgara en las operaciones divisorias de la herencia de su madre doña Agustina. La demandante aceptó y dió las gracias a su padre por su liberalidad. El notario asegura que leyó la escritura a los otorgantes y testigos, firmando todos;

Que el 16 de mayo de 1914 comparecieron ante el notario Rodríguez la demandante que se identifica como "de una parte la vendedora doña María Ramona Delgado Santiago

de veinte y un años, sin profesión, casada con don Angel Rivera'' y de la otra como comprador Enrique Marchese Lajara, el demandado. También compareció el esposo de la demandante. Por la escritura aparece vendiendo la demandante al demandado la casa descrita en la demanda por el precio de $1,600, que la demandante ''confiesa haber recibido a su satisfacción con anterioridad a este acto por lo que otorga al señor Marchese cumplida y eficaz carta de pago''. En la escritura hizo constar el esposo de la demandante lo que sigue: ''Aunque don Angel Rivera no necesita dar su consentimiento a su esposa para esta venta, desea hacer constar que ha sido efectuada con su beneplácito.'' Al final del documento aparece que el notario lo leyó a los otorgantes y testigos, ratificándolo los primeros y firmándolo todos.

Otras copias de escrituras públicas demuestran que el demandado adquirió del municipio de Lares la propiedad del solar en que se levanta la casa que antes tenía en usufructo; que el 14 de febrero de 1918 vendió el inmueble a Pablo Calcerada por $3,100, y que el 27 de febrero de 1924 lo readquirió de Calcerada por $2,900.

La prueba testifical versó sobre el hecho de la compra de la casa y sobre su reparación, transformación o reconstrucción.

El testigo Márquez aseguró que allá por el 1914 la demandante tenía una casa que estaba deshabitada, clausurada por la Sanidad, que le ofrecieron en venta y no quiso comprar, adquiriéndola entonces el demandado que entregó a la demandante su precio de $1,600. Y el testigo Suau afirmó que la demandante vendió al demandado la casa, recibiendo ella misma el precio. Ambos testigos lo fueron también del contrato hecho constar en la escritura de 16 de mayo de 1914.

Declarando el demandado dijo, en parte, textualmente:

''. . . porque resulta que la casa que yo le compré a ella se destruyó; aquella casa fué destruída; los estantes se removieron; los costados de la casa eran de barro, piedras y pedazos de ladrillos y

estaban todos agujereados; esas paredes estaban en ruinas cuando yo compré la casa, que me la ofreció en venta el esposo de doña María Delgado y yo no quise comprarla y después me la ofreció ella y alguien me dijo que era un buen negocio y yo le compré la casa, que estaba clausurada por la Sanidad por no habitable; entonces yo hice un contrato de reparación y pedí que me hicieran un plano, que me lo hizo Francisco Levy González, que se lo había hecho a ella. . . . Cuando se destruyó esa casa hubo que quitar los estantes, hubo que removerlos, porque la casa tenía dos martillos y todo se removió y se hizo una casa cuadrada y entonces yo le pedí al Ayuntamiento que me concediera el solar. . . . Yo le pedí al Ayuntamiento que me diera la concesión del usufructo del solar y la declaración de propiedad donde hice la casa nueva; ésa no es una casa arreglada.''

La demandante declaró llamada como testigo del demandado haberse casado en febrero 1914 con Angel Rivera que falleció habiendo contraído segundas nupcias con Ramírez Cuerda.

El testigo León Jr. fué el maestro de obras que trabajó en la casa. En parte, aseguró lo que sigue:

''Las reformas que se hicieron fueron que se le tumbaron los muros, se agrandó la casa hacia el lado del Municipio y se trajo a la línea; se le puso cerca de zinc; se le puso más luz en el piso de abajo porque era demasiado bajito; aquél no tenía más de ocho y medio pies y la Sanidad pide diez pies como mínimo para poderse habitar una casa y se le puso el piso de concreto donde antes era de maderas y se le quitó de largo hacia el fondo y se dejó de catorce metros, y en vez de tener el martillo que tenía se hizo toda en un cuerpo rectangular de once y medio metros de frente por catorce de fondo y está techada de zinc, de cuatro aguas. . . . En la reforma se gastaron como tres mil y pico de pesos; la casa se hizo completamente nueva; la casa no tenía luz y hubo que hacerla con luz suficiente porque la Sanidad la clausuró; en los bajos era muy bajita de luz; la casa aun todavía no tiene diez pies de luz; esa casa con ese frente debe tener más luz; la casa era sumamente bajita y era de tejamaní y tejas de barro.''

Cuando el demandado introdujo como prueba el contrato de compra a la demandante ésta se opuso ''toda vez que constituía para dicha parte una sorpresa'' dada la forma en

que estaba redactada la contestación. La corte resolvió el incidente así:

"De la contestación a la demanda aparece que se niegan todos y cada uno de los hechos de la demanda, haciendo una negación general y estableciendo materia nueva de oposición a la demanda, alegándose otras cuestiones atinentes a lo mismo. La Corte resuelve que mediante esa negativa general cabe la aceptación de esta prueba, pero como quiera que según ya ha indicado la Corte no puede quedar la parte sorprendida, ésta siempre tiene derecho a presentar prueba en contrario o prueba sobre la nulidad de este título; surgida la cuestión la parte tiene el campo abierto para traer su prueba sobre la nulidad del título, y después de presentada ésta podría también si lo creyere conveniente solicitar una enmienda para que la demanda se conforme a la prueba. La Corte admite este documento, como admitirá prueba contra este documento respecto de la capacidad o nulidad del mismo."

El juicio terminó con la declaración de la demandante ofrecida en "rebuttal" y la presentación de una certificación del Registro Civil de Lares. El demandado se opuso a la admisión del certificado porque el nacimiento se inscribió en 1920; porque la cuestión de la edad de la demandante no se suscitó en su demanda; porque aunque se hubiera suscitado no existiría causa de acción de acuerdo con lo resuelto en el caso de la *Sucesión Rivera* v. *Hernández*, 31 D.P.R. 813, y porque la venta la verificó la demandante asistida de su esposo. La corte decidió el incidente como sigue:

"La Corte va a admitir, para darle el valor probatorio que pueda tener, esta certificación tal como aparece, después de estudiar si realmente es un *self serving evidence* y todas las cuestiones relativas al caso."

La inscripción se hizo en 1920. En lo que estimamos pertinente, copiada a la letra dice:

"Número 418.—María Delgado y Santiago.—El Encargado del Registro Civil que suscribe hace constar: Que esta inscripción se hace en virtud de Resolución de la Corte de Distrito de Aguadilla, P. R. con fecha nueve de abril de 1920 y que tengo a la vista de lo que certifico.—Dr. Agustín Diez.—En el centro.—Acta de Nacimiento.—

En Lares, P. R., el trece de abril de mil novecientos veinte, siendo las once de la mañana, en virtud de la declaración a mí presentada por Celestina Santiago, mayor de edad, de estado viuda, de profesión su sexo, natural de Camuy, P. R., avecindada en el barrio de Buenos Aires, término municipal de Lares, P. R., yo, Agustín Diez Gutiérrez, Encargado del Registro Civil, procedo a extender esta acta de nacimiento haciendo constar:—1.—Que a las siete de la mañana del día once de abril de mil ochocientos noventa y siete y en su casa habitación del barrio Buenos Aires de Lares, P. R., nació una niña de raza blanca, a la que se le puso por nombre María.''

La demandante declaró que a la fecha de la escritura de venta tenía 17 años de edad y contestando a la pregunta de si sabía por qué aparecía su nacimiento inscrito en 1920, dijo: ''Porque antes se acostumbraba bautizarnos y solamente apuntarlo en la Iglesia y al morir papá al hacer testamento entonces el abogado al ir a repartir los bienes nos inscribió; fué cuando murió mi papá al hacer testamento, pero ya estábamos en el registro de la Iglesia.''

La demandante solicitó permiso para enmendar su demanda a fin de conformarla a la prueba alegando ''la nulidad del título de Marchese si él tuvo algún título''. Se opuso el demandado. El juez razonó largamente su resolución y terminó diciendo:

''Esta prueba que admitió la Corte como consecuencia de la escritura de compraventa fué objetada y excepcionada por el demandado, haciendo oposición a que se admitiera la prueba de la minoría de edad de la demandante de un modo expreso y terminante; y la Corte cree que siendo esta enmienda relativa a una prueba fundamental que determina una causa nueva de acción, cual es la de nulidad de compraventa y que esa prueba con esos efectos fundamentales fué objetada por la parte contraria, repite la Corte que en este caso aceptar la enmienda sería ir más allá del buen ejercicio de la discreción judicial y caer en el campo del abuso de dicha discreción y, por tanto, deniega la pretensión del demandante para que se enmiende su demanda en el sentido de conformarla a la prueba de referencia, declarando sin lugar esta petición de enmienda . . .''

Insistió la demandante en sus pretensiones y el juez dijo:

"Entonces la Corte se reserva su resolución en el caso, y concede a las partes diez días para la presentación de alegatos simultáneos."

La sentencia de la corte se dictó el 22 de abril de 1930 absolviendo de la demanda al demandado con costas a la demandante. Ésta apeló y en su alegato señala nueve errores cometidos a su juicio por la corte: 1, al no dar valor probatorio a la partida de nacimiento; 2, al negar la enmienda a la demanda; 3, al resolver que la enmienda variaba la causa de acción; 4, al resolver que no podía presentar prueba de la inexistencia del título del demandado; 5, al fallar que las reparaciones constituían una reconstrucción; 6, al resolver que la demandante pudo vender a los diez y siete años de edad; 7, al permitir al demandado presentar prueba sobre la supuesta compraventa y negarse luego a considerar la aportada por la demandante sobre su nulidad; 8, al dictar sentencia en favor de la demandada basándose en la prueba practicada, y 9, al no ordenar la reivindicación.

A nuestro juicio la demandante no planteó el debate francamente. Tampoco lo aceptó con franqueza el demandado. Esto confundió a la corte de distrito en varias ocasiones, pero como la sentencia que dictara resuelve el pleito en definitiva, y los autos contienen los elementos necesarios para considerar y decidir todas las cuestiones envueltas en el litigio, iremos al fondo y lo resolveremos de acuerdo con los hechos y la ley tal y como encontremos comprobados los unos y aplicable la otra.

Como antes expusimos la demandante alegó que era dueña de la casa en cuestión y que el demandado la ocupaba desde 1914 sin derecho alguno. La demanda no está jurada y el demandado negó sus hechos generalmente y entre otras alegaciones hizo la de que tenía entendido que una casa en ruinas que existía en el solar había sido vendida por la demandante. ¿Cuánto más claro no hubiera sido referirse desde un principio a la escritura de venta de 16 de mayo de 1914, sosteniendo la demandante la inexistencia del contrato que en ella se hace constar por ser menor de edad la vende-

dora, e invocándola el demandado como la base de que parte su derecho?

Sin embargo, la cuestión a nuestro juicio no tiene importancia, porque tales como están redactadas las alegaciones permiten al demandado la presentación como prueba de la indicada escritura y a la demandante la demostración de que era menor de edad al otorgarla sin necesidad de enmendar su demanda para conformarla a la prueba. Si el contrato es inexistente, bien pudo alegar la demandante que no vendió, y si tuvo el contrato realidad de hecho y ha llegado a tenerla de derecho a virtud de las circunstancias concurrentes, bien puede descansar en ella el demandado.

Despejada así la situación, examinaremos los hechos y circunstancias concurrentes tales como surgen de las alegaciones y las pruebas.

Comenzaremos por la edad de la demandante. Ella declara que tenía diez y siete años en 1914. La copia de la inscripción de su nacimiento indica que éste ocurrió el once de abril de 1897. Una simple operación aritmética demuestra que en efecto de acuerdo con el registro civil la demandante probó que tenía 17 años de edad cuando se otorgó la escritura de venta de 1914.

No hay duda alguna que llama la atención el hecho de que la inscripción se hizo no como ordena la ley dentro de un corto período después de ocurrido el nacimiento, sino después de transcurridos veinte y tres años del mismo. Tampoco la hay de que hubiera sido más persuasivo que se hubiera presentado copia de la resolución judicial por virtud de la cual se ordenó la inscripción para conocer su naturaleza y fundamentos, y de la partida de bautismo en que según la demandante se basó su abogado para arreglar la inscripción cuando la testamentaría de su padre, pero dejando todo ello a un lado hay que reconocer que la inscripción quedó en pie y que para toda ulterior consideración en el litigio hay que partir de la base de que la demandante tenía diez y siete años de edad en 1914.

Tenía en 1914 diez y siete años según la verdad legal dentro de este pleito, pero la prueba demuestra también que en 1913 compareció ante el Notario Público Paz Urdaz y dijo que tenía veinte y un años de edad cumplidos y después de leérsele ratificó y firmó el documento en que así lo hizo constar el notario autorizante; que en 1914, ya casada, volvió a comparecer acompañada de su padre ante otro notario público, Acevedo, y a afirmar que tenía veinte y un años de edad, aceptando la donación del usufructo de la casa en litigio que su padre le hiciera dándole las gracias por su liberalidad y firmando, después de leérsele el documento en que así se hizo constar, y que días después, en mayo de 1914, acompañada de su esposo compareció ante un tercer notario, Rodríguez, y reiteró su dicho de tener veinte y un años de edad, vendiendo al demandado la casa que ahora reclama por la suma de mil seiscientos dólares que confesó recibidos a su satisfacción, ratificando y firmando el documento después de leérselo el notario.

Por su propia voluntad esta demandante representó tener veinte y un años en tres documentos públicos otorgados dentro del período de un año—10 octubre 1913 a 16 mayo 1914—ante tres notarios distintos, en el primero acompañada de todos sus familiares, en el segundo de su padre y en el tercero de su esposo, sin que nadie llamara la atención sobre lo falso de su representación. Su apariencia, pues, tuvo que ser la de una persona mayor de edad, a menos que se concluyera que todos estaban confabulados para ocultar la verdad.

Y dicen más los autos con respecto a la personalidad de la demandante. Ella misma declaró que desde 1912 se posesionó de la casa entendiéndose con los inquilinos que le pagaban a ella las rentas y los testigos Márquez y Suau declararon en el juicio que a ella misma fué que pagó el comprador demandado los mil seiscientos dólares precio de la venta. Fué su marido y ella misma después la que propuso el negocio al demandado.

Pocas veces se habrá podido presentar ante los tribunales un caso más fuerte de representación por parte de un menor de su mayoridad para contratar con otra persona que en él confía y con él contrata como si fuera un mayor. No hay la más leve prueba de que el comprador supiera que estaba contratando con un menor de edad. Para enterarse del título del vendedor debió naturalmente el comprador examinar las escrituras de partición y donación de 1913 y 1914 y en ellas lo único que pudo advertir fué que su vendedora era mayor de edad. Como cosa natural debió aceptar su dicho en la escritura de venta, tanto más cuanto que compareció acompañada de su esposo y éste mostró expresamente su conformidad con la transacción realizada.

La circunstancia de que el demandado fuera testigo en 1912 del testamento de la abuela, nada implica. Ya dijimos que en dicho documento se nombró a la nieta sin expresar su edad.

El precio pagado era razonable. Por cuatrocientos dólares menos se valoró el inmueble en la escritura de partición y la propia prueba testifical de la demandante tiende a demostrar que valía un par de mil pesos, o sea cuatrocientos más.

El contrato tuvo efecto en la práctica. El comprador entró inmediatamente en el pleno disfrute de la casa adquirida e invirtió en ella más dinero del que pagó por ella originalmente. Puede ser que no la reconstruyera enteramente, pero que la reparó y transformó en gran manera, es claro. Compró además el solar en que está sita y dispuso como dueño del inmueble vendiéndolo a otra persona, readquiriéndolo otra vez por una segunda compra.

Y es cuando todo eso ha sucedido, cuando el padre que donó el usufructo y el esposo que expresamente consintió en la venta han muerto, cuando otro esposo ocupa su lugar y cuando han transcurrido nueve años de haber arribado la demandante a la mayor edad, según su propia prueba, que inicia este pleito pidiendo a la corte que la declare dueña

exclusiva de la casa y ordene al demandado que la deje a su libre disposición y que pague las costas, gastos y honorarios de abogado del litigio.

¿Cuál es la ley reguladora de una situación semejante? En dos ocasiones la ha expuesto esta corte. La primera en el caso de *García et al.* v. *Garzot,* 18 D.P.R. 866, la segunda en el de *Sucesión Rivera* v. *Hernández,* 31 D.P.R. 813.

En *García* v. *Garzot* se expresó esta corte como sigue:

"A la fecha del otorgamiento de las escrituras, Paxot tenía, según la documentación que él mismo presentara al efecto, cumplidos 23 años, y, según la documentación presentada por sus herederos en este pleito, cumplidos 22 años, o sea un año más de lo que la ley requiere actualmente para la mayoría de edad. Paxot era en aquel entonces además un hombre casado, con hijos, con derecho a administrar sus bienes, y murió cerca de cuatro años después de otorgadas las escrituras, sin que nada reclamara en contra del demandado. Esta reclamación se ha interpuesto diez años después de su muerte, por sus herederos. No hay la más leve prueba que demuestre que el demandado conociera que faltaban a Paxot algunos meses para llegar a la mayoridad, ni que Paxot recibiera perjuicio alguno con la transacción verificada.

"¿Sería posible, bajo tales circunstancias, que un tribunal de justicia dictara ahora una sentencia condenando al demandado a pagar nuevamente su deuda, ya satisfecha, con más los intereses, ascendente todo a unos diez y seis mil pesos?

"Una respuesta negativa se impone, respuesta que está conforme con la jurisprudencia del Tribunal Supremo de España consignada en su sentencia de 27 de abril de 1860, al establecer que 'son válidas las ventas de bienes raíces hechas por menores de edad, cuando fingen ser mayores de 25 años, y por la circunstancia de estar próximos a esa edad, ser casados, y tener la administración de sus bienes, u otras especiales que en los mismos concurran puedan creer los que intervinieron en el contrato que son mayores de edad.'

"La única diferencia que pudiera notarse entre el caso resuelto por el Tribunal Supremo de España y éste que resolvemos, es que aquí no se ha demostrado que Paxot *fingiera* que era mayor de edad al comparecer a otorgar las escrituras, pero si bien esto es así, resulta probado que Paxot personalmente instó el asentamiento de su partida bautismal en la cual se hizo constar que su nacimiento había ocurrido el 1 de febrero de 1872; que personalmente también con-

currió en dos ocasiones ante notario público y afirmó que era mayor de edad presentando al efecto una copia certificada de su partida de bautismo y su cédula de vecindad, y que, por tanto, consciente o inconscientemente indujo al demandado Garzot a considerarlo como mayor de edad y a pagarle su deuda, sin que pueda decirse que el demandado al proceder así, bajo todas las circunstancias de este caso, dejara de actuar como varón prudente.

"La cuestión en su segundo aspecto, queda pues, resuelta de este modo: atendidas todas las circunstancias que concurren en este caso concreto, deben considerarse válidas y eficaces las escrituras de cancelación de hipoteca a que se refiere este pleito, y en tal virtud que el pago hecho por Garzot de buena fe a Paxot que estaba en posesión de su crédito, liberó al primero de la deuda que con el segundo tenía contraída. (Art. 1164 del Código Civil Español y 1132 del Revisado.)"

Y en *Sucesión Rivera* v. *Hernández,* dijo:

"En cuanto a las cesiones hechas por Prudencia y por Regalada en 1905 y 1908 cuando tenían 20 y 19 años de edad respectivamente, según resulta de las certificaciones de sus nacimientos, aunque entonces no resolvimos sobre la validez de sus cesiones, será conveniente que digamos ahora que habiendo manifestado ellas dos en las escrituras de cesión a Hernández que eran mayores de edad, estando próximas a los 21 años fijados por la ley para la mayoridad, y no habiendo ejercitado dentro de los cuatro años siguientes a haber alcanzado su mayoría de edad la acción de nulidad reconocida por el artículo 1268 del Código Civil, dichas cesiones quedaron convalidadas y, por tanto, Hernández adquirió los derechos que ellas tenían. Los contratos celebrados por menores en que fingen ser mayores de edad cuando estén próximos a alcanzar dicha mayoría, no son inexistentes sino anulables."

Nos damos cuenta de que quizá estamos yendo demasiado lejos al aplicar esa jurisprudencia al caso de un menor de diez y siete años, pero son tan peculiares las circunstancias que aquí concurren que nos ha parecido que la justicia demanda su aplicación.

De la misma fijación por el legislador del número de años que necesita cumplir una persona para ser considerada mayor de edad, se deduce que han existido diferentes criterios. Con anterioridad al Código Civil de 1889 sólo a los

veinte y cinco años se entraba en la mayor edad, según el Código Civil de 1889 bastaban veinte y tres y según el Código Civil Revisado son suficientes veinte y uno : cuatro años de diferencia.

Por más que siempre se ha tenido en cuenta el desarrollo de la personalidad, no puede dejarse de admitir que hay algo de arbitrario en la fijación de la mayor edad. Se fija porque tiene que existir certeza sobre asunto tan importante, pero ello no implica que se desconozca que la personalidad humana se desarrolle de modo distinto. Personas hay de diez y siete años que piensan mejor, que tienen personalidad más completa y más fuerte que otras de veinte y uno.

La regla es que el contrato otorgado por un menor, es nulo, porque la ley no le reconoce capacidad para contratar, pero cuando el menor aparenta ser mayor y la otra parte contratante actúa creyéndolo así, de buena fe, y se trata de una transacción justa y verdadera que tuvo realidad en la práctica y subsiste a las claras a través de los años, no es inexistente el contrato.

Bien puede sostenerse que lo que ha hecho la jurisprudencia es continuar interpretando los hechos y la ley a la luz que irradia aun a través de los siglos del Código formado bajo la dirección del Rey Sabio. Dice la Ley VI, Título XIX, Partida Sèxta:

"LEY VI.—*Por quáles razones non puede seer otorgada restitución al menor.*—Diciendo o otorgando el que fuere menor que era mayor de veinte et cinco años, si hobiese persona que paresciese de tal tiempo, si lo face engañosamente valdrá el pleyto que así fuere fecho con él, et non debe seer desatado después, como quier que diga que non era de edad quando lo fizo, porque las leyes ayudan a los engañados et non a los engañadores. Eso mesmo serie quando el mozo que fuese mayor de catorce años jurase que la véndida, ó el pleyto o la postura que ficiese con otri non la desatarie por razón de menor edat; ca después que así hobiese jurado debe seer guardada su jura. Otrosi decimos que si el menor de veinte et cinco años pidiese al juez quel entregase dalguna cosa que habie perduda ó menoscabada por razón de pleyto que hobiese fecho non seyendo

de edat complida, si sentencia fuese dada contra él, porque non era asi como él querellaba, non puede despúes demandar otra vez que sea entregado daquella cosa delante daquel juez nin ante otro, fueras ende si apelase daquella sentencia, o si mostrase razones nuevas atales que gelas debiesen caber. Otrosi decimos que si el menor de veinte et cinco años moviese pleyto en juicio con otorgamiento de su guardador, demandando a alguno que era su siervo, si fuese dada sentencia contra él, en que fuese dado por libre aquel á quien demandaba, non podrie despúes demandar restitución contra tal sentencia por razón que era de menor edat quando movió el pleyto; et esto es por la mejoria que otorgan los derechos a la libertad. Et aun decimos que si el pleito o la postura de que demandase restitucion el menor fuese fecho en tal manera que todo home de edat complida et de buen entendimiento la farie asi, et non se debie tener por engañado por ende, que entonce non debe seer desfecho por razón que lo fizo en tiempo que non era de edat, porque siempre ha de probar dos cosas el que demanda restitución: la una que era de menor edat a la sazon que fizo el pleyto o la postura; la segunda que lo fizo a daño et a menoscabo de sí.''

*Debe confirmarse la sentencia recurrida.*

El Juez Asociado Señor Hutchison disintió.*

El Juez Asociado Señor Córdova Dávila no intervino.