# 97 DTA 148

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE PONCE Y AIBONITO**
**PANEL I**

ARAMITA CAMACHO ORTIZ, AGUSTIN CAMACHO ORTIZ, EN
REPRESENTACION DE LA SUCESION CAMACHO OLIVERAS
Y ADELMA ORTIZ RAMOS
Demandantes-Apelantes

v.

SUCESION CAMACHO ORTIZ COMPUESTA POR MARITZA CAMACHO PANETO
(MENOR) REPRESENTADA POR SU MADRE MARITZA PANETO
Demandados-Apelados

Núm. KLAN-95-00936

San Juan, Puerto Rico, a 27 de junio de 1997

Panel integrado por su Presidente, Juez Sánchez Martínez
y los Jueces Córdova Arone y Segarra Olivero

Segarra Olivero, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La parte demandante-apelante de epígrafe nos solicita la revocación de una sentencia emitida por el Tribunal de Distrito, Sala de Yauco, mediante la cual se declaró sin lugar una demanda solicitando la nulidad de un contrato de cesión plasmado en una escritura de cesión de derechos y acciones. El tribunal recurrido resolvió que la reclamación instada por la parte demandante estaba prescrita y, por consiguiente, desestimó la misma.

La parte apelante alega, esencialmente, que erró el tribunal *a quo* al no decretar la nulidad del contrato en cuestión, pues éste fue uno simulado.

Examinados los planteamientos de las partes, los documentos que obran en el expediente ante nuestra consideración, así como la ley y la jurisprudencia aplicable, entendemos que no le asiste la razón a la parte apelante, por lo que procede la confirmación de la sentencia apelada.

### I
Expongamos el trasfondo fáctico y procesal que dio margen a la presentación de este recurso.

El 31 de agosto de 1988, Reinaldo Camacho Ortiz, mayor de edad, soltero, empleado y vecino de Yauco, Puerto Rico compareció como el cesionario en un contrato de cesión sobre un inmueble ubicado en el Barrio Pueblo Norte de Yauco, ante el notario Xavier R. Torres Villa. ■ De otra parte, María del Carmen Jiménez Soto, Nilda Jiménez Ríos, Venancio Jiménez Martínez y José Ramón Jiménez Martínez (en adelante los cedentes), comparecieron en calidad de cedentes de sus participaciones en el referido inmueble a favor de Reinaldo Camacho Ortiz. En esa fecha, ambas partes otorgaron la escritura Número Noventa y Uno denominada como *"Cesión de Derechos y Acciones"*. Se hizo constar en dicha escritura que la cesión de las participaciones en el inmueble tenía un valor de $2,300.00 y que dicha cantidad se dividiría entre los herederos de Don Romualdo Jiménez y de Doña Antonia Soto Vélez de acuerdo a sus respectivas participaciones. En la escritura no se indica si dicha cantidad de dinero fue entregada al momento del otorgamiento del contrato. El inmueble objeto de la cesión aparece descrito en dicha escritura de la siguiente manera:

*"URBANA: -solar situado en la Calle "E" Número Catorce (14) del sitio denominado Pueblo Nuevo del Barrio Pueblo Norte de Yauco, Puerto Rico, cuyas medidas y colindancias son las siguientes: NORTE, ocho metros colindando con Antonio Sepúlveda; SUR, ocho metros, colindando con la calle de su radicación; ESTE, ocho metros, colindando con Santiago Silva y OESTE, nueve metros, colindando con Benjamín Torres. Contiene una casa de madera y cemento, techada de zinc, de dos plantas dedicadas a vivienda, los altos con medio balcón al frente, en forma de chalet. Mide dieciseis pies de frente por veinte pies de fondo."*

Así las cosas, el 26 de octubre de 1993, la parte demandante de epígrafe compuesta por Aramita y Agustín Camacho Ortiz --hermanos de Reinaldo Camacho Ortiz--, en representación de la Sucesión Camacho Oliveras, y Adelma Ortiz Santos --madre de éstos-- (en adelante los demandantes-apelantes), presentaron una demanda en el anterior Tribunal de Distrito, Sala de Yauco, intitulada *"Nulidad de Título, Oposición a Inscripción de Título y Declaración de Derechos"* contra la Sucesión Camacho Ortiz, compuesta por Maritza Camacho Paneto representada por su madre Maritza Paneto Martínez (en adelante las demandadas-apeladas). Los demandantes-apelantes alegaron esencialmente que el contrato de cesión fue uno simulado, ya que Reinaldo Camacho Ortiz compareció al mismo sólo como un prestanombre o testaferro, que el verdadero cesionario y contratante lo fue su padre, el Sr. Augusto Camacho Oliveras, quien satisfizo el valor de las participaciones de los cedentes en el referido inmueble con dinero proveniente de la sociedad legal de gananciales que tenía compuesta con la Sra. Adelma Ortiz Ramos En adición, los demandantes-apelantes señalaron: (a) que el Sr. Augusto Camacho Oliveras permaneció oculto en la transacción jurídica para no tener que contar con el consentimiento de su esposa para adquirir dicho inmueble; (b) que Reinaldo Camacho Ortiz nunca ejerció la posesión de la propiedad y que al momento del otorgamiento de la escritura de cesión era menor de edad, estudiante y no generaba ingresos; (c) que fue don Augusto Camacho Oliveras quien ejerció todos los actos de dominio sobre el inmueble, realizó mejoras a la propiedad, alquiló ambas plantas de la residencia, cobraba las rentas, etc; y (d) que en la actualidad, es doña Adelma Ortiz Ramos quien continúa realizando los actos de

administración sobre la misma.

En virtud de lo anterior, la parte demandante-apelante le solicitó al tribunal *a quo* lo siguiente: (1) que declarase nulo el título de Reinaldo Camacho Ortiz adquirido mediante la cesión de derechos y acciones porque dicho contrato había sido simulado; (2) que reconociera dicho inmueble como propiedad de la sociedad legal de gananciales formada por don Augusto Camacho Oliveras y doña Adelma Ortiz Ramos, o en la alternativa, declarase dicha transacción como una donación inoficiosa; (3) que reconociera dicha propiedad como parte del patrimonio dejado por el Sr. Augusto Camacho Oliveras.

Por su parte, las demandadas contestaron la demanda negando esencialmente las alegaciones de los demandantes.

Posteriormente, enmendaron su contestación para levantar como defensa afirmativa que la reclamación incoada por los demandantes estaba prescrita. Afirmaron que el contrato de cesión otorgado por Reinaldo Camacho Ortiz, siendo un menor de edad con capacidad para discernir, era meramente anulable y no nulo e inexistente, según se dispone en el Artículo 1215 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3402; y que, por tanto, la reclamación incoada por los demandantes estaba prescrita, pues de conformidad con el Artículo 1253 del Código Civil, 31 L.P.R.A. sec. 3512, éstos tenían cuatro años para solicitar la anulación del contrato de cesión.

Así las cosas, el 1 de marzo de 1994 se celebró la conferencia con antelación al juicio. Las partes sometieron el informe sobre conferencia preliminar entre abogados y sus respectivos memorandos de derecho. Las partes estipularon la siguiente prueba documental: (1) certificado de acta de defunción del Sr. Augusto Camacho Oliveras, del cual surge que éste falleció el 26 de mayo de 1993; (2) certificado de nacimiento de Reinaldo Camacho Ortiz, del cual surge que éste nació el 27 de agosto de 1963; (3) escritura número noventa y uno de Cesión de Derechos y Acciones otorgada el 31 de agosto de 1981 ante el notario Xavier Torres Villa por Reinaldo Camacho Ortiz y los cedentes antes mencionados; (4) testamento abierto otorgado por el Sr. Augusto Camacho Oliveras el 3 de noviembre de 1991 a las 11:30 de la mañana ante el notario Frank Torres Ortiz, en el cual mencionó que adquirió tres inmuebles con la que fue su esposa Adelma Ortiz Ramos, entre los cuales incluyó el inmueble objeto de la presente controversia, ubicado en la calle E-14 del Barrio Pueblo Norte de Yauco; (5) sentencia de divorcio de Augusto Camacho Oliveras y Adelma Ortiz Santos dictada el 15 de diciembre de 1989 en la cual se indicó que las partes contrajeron matrimonio el 5 de noviembre de 1942; (6) tasación de la propiedad ubicada en la calle E-14 del Barrio Pueblo Norte de Yauco realizada el 24 de febrero de 1994, de la cual surge que la propiedad está valorada en $38,000.00; y (7) certificado de defunción del Sr. Augusto Camacho Oliveras.

La vista en su fondo se celebró el 20 de abril de 1994. Ambas partes comparecieron representadas por sus respectivos abogados.

El tribunal de primera instancia, luego de escuchar y analizar la prueba testifical y documental presentada por las partes, formuló las siguientes determinaciones de hechos:

"*1. Los co-demandantes, Aramita Camacho Ortiz, Agustín Camacho Ortiz y la co-demandante Adelma Ortiz Ramos son hijos y ex-cónyuge, respectivamente, del Sr. Augusto Camacho Oliveras, quien falleciera el 26 de mayo de 1993.*

*2. El Sr. Reinaldo Camacho Ortiz, quien naciera el 27 de agosto de 1963 y falleciera el 25 de julio de 1991, se casó el 31 de julio de 1987 con la co-demandada Maritza Paneto Martínez, con quien procreó a la menor Maritza Camacho Paneto.*

*3. El Sr. Reinaldo Camacho Ortiz, ya fallecido, es hijo del Sr. Augusto Camacho Oliveras, también fallecido, y de la co-demandante Adelma Ortiz Ramos.*

*4. El co-demandante, Agustín Camacho Ortiz, declaró que conoció, por primera vez, de los alegados actos de simulación para la compra de la propiedad que ubica en la Calle E, Núm. 14 del Barrio Pueblo Norte, de Yauco, P.R., en adelante E.14, aquí en controversia, en 1981. Asimismo,*

*señaló que no estuvo presente en la referida transacción ni vió [sic] el alegado dinero que fue entregado en la misma.*

*5. La co-demandante, Adelma Ortiz Ramos, declaró que fue la esposa del Sr. Augusto Camacho Oliveras, ya fallecido, de quien se divorció posteriormente. Testificó, además, que su entonces esposo compró la propiedad aquí impugnada y la "puso" para el año 1981 a nombre de su hijo también fallecido, Reinaldo Camacho Ortiz.*

*6. La co-demandante, Adelma Ortiz Ramos, señaló que al morir su hijo Reinaldo, su esposo Augusto Camacho Oliveras, ya fallecido, abrió una cuenta de ahorros a nombre de la niña Maritza Camacho Paneto, para depositar en la misma la renta recibida por concepto de la casa ubicada en el E 14, lo cual ocurrió hasta la muerte de éste el 26 de mayo de 1993.*

*7. La co-demandante, Aramita Camacho Ortiz, declaró igualmente que su padre adquirió la referida propiedad, E 14, en 1981, y que posteriormente la reconstruyó totalmente.*

*8. La co-demandada, Maritza Paneto, declaró que su ex-esposo, Reinaldo Camacho Ortiz, ya fallecido, trabajaba como machinero, y que siempre señalaba que la residencia ubicada en E 14 era de su propiedad. También señaló que al ambos casarse, el padre de Reinaldo, le solicitó que vivieran con el, ya que la casa E 14 estaba alquilada."*

El tribunal *a quo* acogió la posición presentada por la parte demandada y concluyó que la reclamación instada por la parte demandante estaba prescrita. Luego de hacer esta determinación, el tribunal procedió a examinar el negocio jurídico realizado entre Reinaldo Camacho Ortiz y los cedentes a la luz de los conceptos jurídicos de simulación relativa y absoluta. Concluyó que no se trataba de un caso de simulación absoluta, pues estaban presentes los requisitos esbozados en *Hernández Usera v. Srio. de Hacienda,* 86 D.P.R. 013 (1962), y reiterados en *La Costa Sampedro v. La Costa Bolívar,* 112 D.P.R. 9 (1982), para la existencia de una donación subyacente válida. En adición, el tribunal recurrido estimó que había existido una transferencia de derechos a favor del señor Reinaldo Camacho Ortiz, pues quedó claramente establecido en el récord que la referida propiedad *"pasó a formar parte de otra persona distinta a los cedentes de la escritura".* Concluyó que las actuaciones de los demandantes y del difunto Augusto Camacho Oliveras, y en particular el hecho de que abrieran una cuenta de ahorros a favor de la menor Maritza Camacho Paneto, *"estaban dirigidas a reiterar los actos de este último en relación a la cesión de derechos efectuada a favor de Reinaldo Camacho Ortiz en 1981".*

Inconforme con tal dictamen, la parte demandante presentó recurso de apelación ante el entonces Tribunal Superior, Sala de Ponce, señalando la comisión de cuatro errores por el tribunal recurrido. Posteriormente, este recurso fue referido a este Tribunal de Circuito de Apelaciones de conformidad con lo dispuesto en el Artículo 9.004(b) de la Ley de la Judicatura de Puerto Rico de 1994, 4 L.P.R.A. sec. 23f (Supl. 1996), y en la Orden Administrativa Núm. XIII, emitida el 23 de enero de 1995 por el Juez Presidente del Tribunal Supremo de Puerto Rico, 4 L.P.R.A. Ap. XXIII, Ord. XIII (Supl. 1996).

## II

La cuestión medular que nos corresponde resolver en el presente recurso es si Reinaldo Camacho Ortiz compareció a la escritura de cesión de derechos y acciones, mediante la cual se le cedió la propiedad antes descrita, como un simple testaferro de Don Augusto Camacho Oliveras, o si, por el contrario, fue éste la verdadera parte contratante.

Examinemos, pues, el derecho aplicable relativo al concepto de simulación contractual.

La simulación ha sido definida como *"el acto o negocio jurídico que por acuerdo de las partes se celebra exteriorizando una declaración recepticia no verdadera para engañar a terceros, sea que ésta carezca de todo contenido, o bien que esconda uno verdadero diferente al declarado".* Díaz García v. Aponte Aponte, 125 D.P.R. 1, 8 (1989) (citas omitidas).

Nuestro ordenamiento jurídico distingue entre la simulación relativa y la absoluta. La simulación relativa tiene lugar cuando bajo la falsa apariencia se encubre un negocio realmente querido que los

contratantes desean sustraer de la curiosidad e indiscreción de terceros. *Díaz García v. Aponte Aponte,* 125 D.P.R 1,10 (1989). El negocio fingido o simulado precisa la existencia de una causa lícita. *Hernández Usera v. Srio. de Hacienda,* 86 D.P.R. 13, 18 (1962). Por su parte, la simulación absoluta se produce cuando el acto jurídico nada tiene de real y meramente crea la apariencia de un negocio. En ésta, el contrato --por carecer de causa-- es nulo, inexistente y no produce efectos jurídicos. *Id., Reyes v. Jusino,* 116 D.P.R. 275 (1985); *Sánchez Rodríguez v. López Jiménez,* 116 D.P.R. 172 (1982); *Hernández Usera v. Srio. de Hacienda, supra.*

El concepto de simulación relativa contractual halla expresión en las disposiciones del Artículo 1228 del Código Civil, 31 L.P.R.A 3433, el cual establece que *"[l]a expresión de una causa falsa en los contratos dará lugar a la nulidad, si no se probase que estaban fundados en otra verdadera y lícita".*

El ejemplo más frecuente de simulación relativa es el caso de *"la donación subyacente en un contrato simulado de compraventa, en donde si bien existe una divergencia entre la apariencia del acto y su contenido real, se sostiene fundado en la causa verdadera que no es otra que la mera liberalidad del bienhechor,"* Artículo 1226 del Código Civil, 31 L.P.R.A. sec. 3431; *Hernández Usera v. Srio. de Hacienda, supra.* Para que la donación disimulada cumpla con las formalidades legales es necesario que el contrato simulado que la encubre haya sido otorgado mediante escritura pública; que se describan individualmente los bienes donados, y en el caso de la donación onerosa, que se expresen las cargas que el donatario asume; y que se haga constar la aceptación del donatario en la misma o en otra separada, pudiendo deducirse esta aceptación de la firma del documento simulado. *Id., supra,* a la pág 25; Artículo 575 del Código Civil, 31 L.P.R.A. sec. 2010.

Nuestro Código Civil presume que todo contrato tiene causa y que ésta es lícita. No obstante, esta presunción puede ser destruida. El Artículo 1228 del Código Civil, 31 L.P.R.A. sec. 3433, establece que *"[l]a expresión de una causa falsa en los contratos dará lugar a la nulidad, si no,se probase que estaban fundados en otra verdadera y lícita".* En *Reyes v. Jusino,* 116 D.P R. 275, 284 (1985), el Tribunal Supremo, señaló en torno al alcance de un contrato simulado cuando se expresa una causa falsa en el mismo, que:

*"Primero, la simulación por sí misma no hace ilícito o nulo el negocio. Segundo, no obstante, se cierne sobre el negocio una mácula de sospecha. Tercero, una vez descubierta la simulación pierde vigencia la presunción de que la misma es lícita, y ya no recae sobre el deudor la carga de probar su existencia. Cuarto, se ha creado una presunción de simulación absoluta contra el negocio disimulado que compete al gestor rebatir mediante la existencia de una causa verdadera y lícita."*

La simulación puede afectar la naturaleza, el contenido o los sujetos del contrato. Para los fines del presente caso sólo nos interesa la que se refiere a los sujetos del contrato, y que se manifiesta mediante la interposición de persona. En esta modalidad se interpone una tercera persona entre el vendedor y el comprador, y es esta tercera persona quien comparece como parte en el contrato, permaneciendo la verdadera parte oculta. F. Ferrara, La Simulación de los negocios jurídicos, 3ra. ed., Madrid, Ed Rev. Der. Privado, 1953, págs. 238-251.

Los tratadistas han señalado dos formas distintas en las que puede ocurrir la simulación en cuanto a los sujetos del contrato. Federico De Castro y Bravo las divide en simulación mediante la interposición de persona ficticia o mediante la puesta a nombre de otro De Castro y Bravo, *op. cit.,* a las págs. 342 y 344. Bajo la primera figura, la persona interpuesta aparece para crear una mera apariencia y ocultar al verdadero adquirente o vendedor, bajo la segunda figura no existe intermediario, sino que se hace figurar como parte a la persona que se quiere beneficiar con el negocio, permaneciendo oculta la persona que verdaderamente realiza el mismo. *Id.*

Por sus características peculiares y de ordinario surgir de un trasfondo de hechos ocultos --psíquicos y generalmente ilícitos-- la simulación ha sido tradicionalmente considerada como materia de *"difficilioris probationes". Díaz García v. Aponte Aponte, supra.* Por tal razón, se reconoce que para probar la existencia de un acto simulado cobran valor excepcional los medios probatorios indirectos, a saber, los testigos y las presunciones. A través de éstos, el juzgador puede llegar a determinar, con certeza razonable, la ocurrencia de la simulación. *Quetglas Alvarez v. Carrazo,* 135

D.P.R. ___ (1993), **93 J.T.S. 146**; *Díaz García v. Aponte Aponte, supra*; R. Díez Duarte, *La Simulación de Contrato en el Código Civil Chileno,* 2da ed., Chile Ed. Fallos Del Mes, 1982, págs. 187-188.

La parte demandante-apelante alega que Reinaldo Camacho Ortiz compareció a la escritura de cesión de derechos y acciones como un simple testaferro y que el verdadero contratante o cesionario lo fue su padre Augusto Camacho Oliveras. Este señalamiento de los demandantes-apelantes está dirigido, principalmente, a cuestionar la apreciación de la prueba realizada por el tribunal *a quo*, el cual concluyó que el verdadero contratante lo fue Reinaldo Camacho Ortiz. Sabido es que en ausencia de indicios de pasión, prejuicio o parcialidad, un tribunal apelativo no intervendrá con la apreciación de la prueba que haya hecho el tribunal de instancia. *Morán Simó v. Gracia Cristóbal,* 106 D.P.R. 155 (1977).

Del examen del expediente ante nuestra consideración, no surge que el contrato de cesión haya sido uno simulado por interposición de sujeto. La posición de la parte demandante-apelante está basada, esencialmente, en alegaciones que no están sustentadas por prueba. Cabe resaltar que no tenemos medios suficientes para determinar si la contención de la parte demandante-apelante está bien fundada o si carece de méritos. La parte apelante no nos ha colocado en condiciones de que podamos examinar los testimonios que tuvo ante sí el tribunal sentenciador al dictar la sentencia recurrida. No se elevó ante este Tribunal la transcripción de la evidencia, por lo que nuestra labor apelativa se encuentra seriamente restringida. ▇ Sólo contamos con la prueba documental que fue estipulada por las partes y con las determinaciones de hechos a las que arribó el tribunal recurrido en su sentencia para examinar si el contrato fue uno simulado por interposición de sujeto.

La parte demandante-apelante alega que el verdadero otorgante y cesionario en el negocio jurídico fue el Sr. Augusto Camacho Oliveras y que Reinaldo Camacho Ortiz, su hijo, compareció sólo como un testaferro. Para arribar a tal conclusión, la parte demandante debió haber presentado prueba conducente a establecer que el Sr. Augusto Camacho Oliveras estuvo presente durante el otorgamiento de la escritura de cesión, que fue él quien contrató con los cedentes o quien inició las conversaciones con éstos, que él fue quien satisfizo los $2,300.00 con dinero suyo o perteneciente a la sociedad legal de gananciales que tenía compuesta con su esposa Adelma Ortiz Ramos, etc... Ninguno de los testigos presentados por los demandantes declaró en cuanto a estos aspectos. El co-demandante Agustín Camacho Ortiz declaró que no estuvo presente durante la referida transacción.

Del examen del expediente, no surge que la parte demandante haya presentado prueba suficiente para rebatir la presunción de causa lícita que permea todos los contratos. Por tanto, no tenemos manera de constatar las alegaciones de la parte demandante de que el Sr. Augusto Camacho Oliveras fue el verdadero contratante en el negocio que en la actualidad se pretende declarar nulo.

Si bien reconocemos que la simulación es muy difícil de probar debido a su naturaleza misma, puesto que está basada en un engaño, tenemos que respetar la norma que presume que todos los contratos tienen causa lícita. La única prueba que tenemos para concluir que estamos ante un negocio simulado es la que surge de la prueba documental que obra en nuestro expediente y de las determinaciones de hechos del tribunal *a quo*. Esta prueba no es suficiente para establecer la existencia de una simulación.

### III

Establecido lo anterior, nos corresponde ahora determinar si el contrato de cesión es nulo o meramente anulable por razón de que Reinaldo Camacho Ortiz era menor de edad a la fecha del otorgamiento del mismo. Resolvemos que es un contrato anulable, al que le es de aplicación el término de cuatro años establecido en el Artículo 1253 del Código Civil, 31 L.P.R.A. sec. 3512. Por consiguiente, la reclamación incoada por los demandantes-apelantes está prescrita.

Nuestro Tribunal Supremo ha resuelto en varias ocasiones que los contratos otorgados por menores de edad que han representado ser mayores y que tengan edad suficiente como para tener uso de razón y capacidad para discernir, representación que llevó a las otras partes a confiar en dichos menores y a contratar con ellos como si fueran mayores de edad, son meramente anulables y no inexistentes. *Del Valle Ríos v. González,* 94 D.P.R. 463, 467 (1967); *Delgado v. Marchese,* 44 D.P.R. 281, 295 (1932);

*Sucn. Rivera v. Hernández,* 31 D.P.R. 813, 818-819 (1923).

En el presente caso, el cesionario Reinaldo Camacho Ortiz contaba con diecisiete años de edad para la fecha del otorgamiento del contrato y alegó en la escritura de cesión ser mayor de edad y estar empleado. La parte apelante no nos ha puesto en condiciones de considerar si los cedentes conocían de la minoridad del cesionario, por lo que tenemos que presumir que desconocían tal hecho.

El Artículo 1254 del Código Civil, 31 L.P.R.A. sec. 3513, establece que sólo las personas obligadas principal o subsidiariamente en virtud de un contrato pueden ejercitar la acción de nulidad de los contratos. En este caso, los demandantes-apelantes no están legitimados para invocar la nulidad de contrato de cesión en el cual compareció Reinaldo Camacho Ortiz, siendo un menor de edad. Por otro lado, y asumiendo para los únicos fines de argumentación que los demandantes pudiesen impugnar el negocio jurídico en cuestión, su reclamación estaría prescrita, pues el término de cuatro años para solicitar la nulidad comenzó a correr desde que el menor arribó a la mayoría de edad. En este caso, la demanda se interpuso el 23 de octubre de 1993 cuando ya había transcurrido el término para solicitar la nulidad del contrato de cesión.

## IV

Por los fundamentos anteriormente expuestos, se confirma la sentencia dictada por el anterior Tribunal de Distrito, Sala de Yauco. Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 97 DTA 148

1. Reinaldo Camacho Ortiz falleció el 25 de julio de 1991. Le sobrevivió su esposa Maritza Paneto Martínez y su hija Maritza Camacho Paneto, quienes figuran como demandadas en el pleito de epígrafe.

2. En este caso, el Tribunal Superior le concedió a la parte demandante-apelante prórroga para someter la exposición narrativa de la prueba oral o una relación escrita de todo lo ocurrido en el caso. Dicha prórroga expiraba el 7 de enero de 1995; sin embargo, no fue hasta el 17 de enero de 1995 que la parte demandante-apelante presentó su *"exposición de la prueba oral"*.

El 20 de enero de 1995, el Tribunal Superior emitió resolución y orden en la que señaló que la exposición de la prueba oral fue presentada fuera del término y ordenó que se elevaran los autos del caso al Tribunal Superior.

La Regla 6 de las Reglas de Apelación del Tribunal de Distrito al Superior, 4 L.P.R.A. Ap. III-A, R. 6, establece que la exposición narrativa de la prueba oral o relación escrita de todo lo ocurrido en el caso, excepto cuando se autorizare una transcripción de evidencia, se presentará dentro del término de veinte días siguientes a la presentación del escrito de apelación.